**UNITED STATES of America, Appellee,**

v.

**Kevin Maurice ROBERTS, Appellant.**

**No. 91–2630.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1991.

Decided Jan. 3, 1992.

Rehearing En Banc Denied Feb. 21, 1992.

352

Ilene A. Goodman, St. Louis, Mo., argued, for appellant.

Dean Hoag, St. Louis, Mo., argued (Stephen B. Higgins and Dean R. Hoag, on brief), for appellee.

Before ARNOLD and FAGG, Circuit Judges, and WOODS,* District Judge.

FAGG, Circuit Judge.

A jury convicted Kevin Maurice Roberts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The district judge sentenced Roberts to 138 months imprisonment. Roberts appeals and we affirm.

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

The jury found Roberts guilty of possession with intent to distribute cocaine on two separate occasions. On November 18, 1988 Roberts sold cocaine to undercover police officers at an apartment. Roberts brandished a gun when the officers attempted to arrest him. The officers entered the apartment and found evidence of substantial drug activity, including guns, four ounces of cocaine, and over $8000 in cash.

Three months later, a police officer observed Roberts driving recklessly in a motel parking lot. After Roberts stopped the car and honked the horn several times, someone in room 208 waved to him. Roberts then sped away. The officer stopped Roberts and asked for his drivers license. In response, Roberts told the officer his name was Melvin Pryor, he had left his license and key in room 208 of the motel, and he did not have any other form of identification. When the officer placed Roberts under arrest for traffic violations, however, a search of Roberts's pockets revealed a birth certificate and insurance form in his real name. Despite these documents, Roberts maintained he was Pryor. When police conducted an inventory search of the vehicle, they found $3300 in cash. Roberts, who was unemployed, claimed ownership of this money. Roberts also claimed he owned the car, which really belonged to Pryor. After Roberts gave police consent to search room 208, they found one pound of cocaine under the bed in an athletic bag. A name tag on the bag indicated it belonged to Pryor.

█ Roberts contends the evidence was insufficient to support his conviction for possession with intent to distribute the cocaine found in the motel room. Roberts asserts the Government failed to prove beyond a reasonable doubt that he constructively possessed the cocaine. *See United States v. Townley*, 942 F.2d 1324, 1325 (8th Cir.1991) (explaining elements of offense). We have defined "constructive possession" as " 'knowledge of presence plus control.' " *Id.* (quoted case omitted). "Constructive possession may be joint, rather than exclusive." *United States v. Turpin*, 920 F.2d

1377, 1383 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991). Viewing the evidence in the light most favorable to the Government and giving the Government the benefit of all reasonable inferences, we conclude a reasonable jury could find beyond a reasonable doubt that Roberts constructively possessed the cocaine found in room 208. *See United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986).

█ First, evidence indicated Roberts had control over room 208. Although Roberts had no key to the room and the room was rented in Pryor's name, the motel clerk testified that Pryor and Roberts came into the motel's office and rented the room together. The clerk also stated Pryor and Roberts had rented rooms at the motel in the same manner on four earlier occasions. In addition, the police officer testified someone in room 208 waved to Roberts. Roberts asserted he had been inside the room containing the cocaine and the room was rented to him. Second, the jury was entitled to infer Roberts's knowledge of the cocaine from the circumstances surrounding the cocaine's discovery, including Roberts's earlier drug activity, regular association with Pryor, lies to police, statements placing himself inside the room and linking himself to the athletic bag, and possession of a large amount of unexplained cash. *See id.* at 1422. Although the jury also could have inferred Pryor alone was the guilty party, the evidence need not rule out every reasonable theory of innocence. *Id.*

Next, Roberts contends the district court misapplied the sentencing guidelines by including the pound of cocaine in calculating Roberts's base offense level. Having concluded the evidence supported Roberts's conviction for that amount, we conclude the district court properly included the pound in its calculation.

█ Finally, Roberts contends the district court committed clear error in increasing his base offense level by two for being "an organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). Roberts asserts the district court denied him due process by basing its finding on an unreliable hearsay

statement contained in the presentence report (PSR). The PSR stated a man arrested in the apartment with Roberts told police he was helping Roberts sell drugs. Roberts volunteered this statement, however, on his recross-examination at trial. The Government elicited the statement from Roberts without objection when rebutting his testimony about discrepancies in a police report. The district court was entitled to rely on evidence presented at trial when sentencing Roberts. *United States v. Lowrimore*, 923 F.2d 590, 594 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2018, 114 L.Ed.2d 105 (1991); *United States v. Dailey*, 918 F.2d 747, 748 (8th Cir.1990). Having concluded the district court could consider the statement, we turn to the merits of the enhancement.

In determining whether a defendant deserves an enhancement under section 3B1.1(c), a sentencing court examines the nature of the defendant's role in the offense, the recruitment of accomplices, the extent of involvement in planning or organizing the offense, and the nature and scope of the illegal activity. *United States v. Maejia*, 928 F.2d 810, 816 (8th Cir.1991). Here, Roberts sold cocaine to undercover officers. Roberts answered the door and conducted the negotiations. Roberts admitted he lived on the second floor of the apartment in which police found guns, four ounces of cocaine, and over $8000 in cash. Another person present in the apartment stated he was helping Roberts sell drugs. Three months later, Roberts possessed $3300 in cash. Based on Roberts's role in the offense and the nature and scope of his illegal activity, we conclude the district court's finding that Roberts was a leader is not clearly erroneous.

Accordingly, we affirm Roberts's conviction and sentence.