Tommy Wayne JONES *v.* STATE of Arkansas

CR 03-401                                        136 S.W.3d 774

Supreme Court of Arkansas
Opinion delivered December 11, 2003

*Larry R. Froelich*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Tommy Wayne Jones entered a plea of guilty to the charge of rape in the Franklin County Circuit Court and was sentenced by a jury to forty years' imprisonment. Appellant subsequently filed a motion for new trial, alleging that his plea was involuntary and that his trial counsel was ineffective. Following a hearing on the motion, the trial court entered an order finding that (1) Appellant's guilty plea was not involuntary; (2) trial counsel was not ineffective because of a conflict of interests; and (3) trial counsel was not ineffective for failing to raise the defenses of mental disease or defect and mistake of age. Pursuant to Ark. Sup. Ct. R. 1-2(d), this appeal was certified to us from the Arkansas Court of Appeals as presenting an issue involving the practice of law. We find no error and affirm.

The record reflects that Appellant was charged in 1996 with the rape of a thirteen-year-old girl, who later gave birth to Appellant's child. Appellant was initially represented by the Franklin County public defender, Craig Cook. Cook subsequently resigned, and William Pearson, public defender for nearby Johnson County, was appointed to represent Appellant. Prior to his trial, Appellant was evaluated to determine whether he was competent to stand trial and whether he was criminally responsible for the crime with which he was charged. His first evaluation occurred in February 1997, during which clinical psychologist Dr. Paul Deyoub concluded that Appellant was not competent to stand trial. He opined that Appellant expressed irrational thoughts and that, although he understood the trial procedure in general, his ability to assist his attorney was impaired. Based on his conclusion, Dr. Deyoub recommended that Appellant be evaluated by the Arkansas State Hospital's Forensic Unit.

Appellant was evaluated at the state hospital in March 1997. Forensic psychologist Dr. Michael Simon concluded that Appellant was competent to stand trial, that he was able to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law, and that he had the capacity to form the

culpable mental state required to commit the crime. In his report, Dr. Simon opined that the reason for the difference in the findings by him and Dr. Deyoub was likely due to Appellant's having been recently incarcerated immediately prior to being evaluated by Dr. Deyoub. Dr. Simon opined that some of Appellant's statements that Dr. Deyoub viewed as irrational or delusional were commonly seen in competent defendants who are professing their innocence. It was thus Dr. Simon's opinion that Appellant was suffering from an adjustment reaction to the stressful situation of incarceration, and that he suffered from an unspecified personality disorder.

Following the evaluation by the state hospital, Appellant's case was set for trial. Prior to the trial date, Appellant fled to California, where he remained until May 1998, when he was caught and returned to Arkansas. Thereafter, Appellant was again evaluated by Dr. Deyoub.[1] This time, Dr. Deyoub concluded that although Appellant suffered from a schizotypal personality disorder, he met the minimum requirements of competency. Dr. Deyoub concurred with the state hospital's conclusion that Appellant was competent to stand trial, that he had the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law, and that he had the ability to form the necessary culpable mental state for the crime charged.

Appellant was tried before a Franklin County jury in August 1999. He was convicted of rape and sentenced to forty years' imprisonment. His conviction was later reversed and remanded by the Arkansas Court of Appeals. See Jones v. State, 73 Ark. App. 432, 44 S.W.3d 765 (2001). Following that appellate decision, on January 23, 2002, one day prior to the scheduled date of his new trial, Appellant appeared with his attorney, Pearson, and entered a guilty plea to the charge of rape. However, he elected to have a jury determine his sentence. Thereafter, a sentencing trial was held resulting in the jury recommending a sentence of forty years' imprisonment.

Following entry of the judgment and commitment order, Appellant obtained the services of new counsel and filed a motion for new trial, alleging that his plea was involuntary and that trial

---

[1] Dr. Deyoub's evaluation report indicates in one place that the evaluation occurred on August 10, 1998, but indicates in another place that the evaluation was conducted on November 10, 1998. The report itself was filed of record on November 12, 1998.

counsel was ineffective. A hearing was held on May 13, 2002, during which trial counsel and Appellant testified. On February 19, 2003, the trial court entered an order denying the motion for new trial, and this appeal followed.[2]

The decision whether to grant or deny a motion for new trial lies within the sound discretion of the trial court. *Smart v. State*, 352 Ark. 522, 104 S.W.3d 386 (2003); *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000). We will not reverse a trial court's order granting or denying a motion for a new trial unless there is a manifest abuse of discretion. *Id.* Moreover, we will not reverse a trial court's factual determination on a motion for a new trial unless it is clearly erroneous, and the issue of witness credibility is for the trial judge to weigh and assess. *Id.* With this standard of review in mind, we turn to the issues raised on appeal.

For his first and second points, Appellant argues that the trial court erred in failing to find that an actual conflict of interest existed and that such conflict prejudicially interfered with the attorney-client relationship. He contends that an actual conflict of interests existed because his trial counsel, William Pearson, previously stood in as guardian *ad litem* to Appellant's children in a juvenile case, wherein DHS sought to remove the children from the custody of Appellant and his wife. As proof of the conflict, Appellant relies on an order entered after a preliminary hearing in which the trial judge wrote: "Bill Pearson stood in as guardian ad litem in this hearing. A guardian ad litem needs to be appointed as Craig Cook has a conflict." Appellant contends that Pearson's prior representation of Appellant's children and subsequent representation of Appellant violated Model Rule of Professional Conduct 1.7, which provides in part that an attorney shall not represent a client if such representation will be directly adverse to another client. Appellant contends further that, at a minimum, there was an apparent conflict about which Pearson should have consulted with Appellant and advised him of the legal implications. We find no merit to this argument.

To prevail on a claim of ineffectiveness due to a conflict of interests, a defendant must demonstrate the existence of an actual conflict of interest that affected counsel's performance, as

[2] This court granted Appellant's motion for belated appeal in *Jones v. State*, 353 Ark. 519, 111 S.W.3d 854 (2003) (*per curiam*).

opposed to a mere theoretical division of loyalties. *Echols v. State*, 354 Ark. 530, 127 S.W.3d 486 (2003) (citing *Mickens v. Taylor*, 535 U.S. 162 (2002)). Thus, "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." *Id.* at ___, 127 S.W.3d at 493 (quoting *Mickens*, 535 U.S. at 171 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980))). However, in the absence of an actual conflict, the defendant must demonstrate prejudice, *i.e.*, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Townsend v. State*, 350 Ark. 129, 85 S.W.3d 526 (2002). To demonstrate prejudice in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Buchheit v. State*, 339 Ark. 481, 6 S.W.3d 109 (1999) (*per curiam*); *Propst v. State*, 335 Ark. 448, 983 S.W.2d 405 (1998) (*per curiam*). *See also Hill v. Lockhart*, 474 U.S. 52 (1985).

Here, the trial court found that there was no conflict of interest on the part of Pearson. The trial court's order reflects: "The evidence indicates that, even though Mr. Pearson may have been appointed guardian ad litem, he never participated in the DHS case, had any involvement, talked to any witnesses, nor took any action in any manner." Pearson's testimony supports the trial court's ruling.

Pearson testified that he could not recall ever being present at any DHS hearing involving Appellant's children, despite the fact that the preliminary order listed him as standing in as guardian *ad litem*. He explained that because he was public defender for Johnson County, it was customary for Franklin County courts to appoint him when the public defender for Franklin County had a conflict. He surmised that was the reason that he was listed as standing in as guardian *ad litem*. He maintained, however, that he had never been present at any hearing with Appellant's children. He stated further that he had never even met Appellant's children or Appellant's wife and had never been in the same courtroom with them. He testified that when he was subsequently appointed to represent Appellant, he assured Appellant that there was no conflict. Furthermore, he stated unequivocally that the issue of any possible conflict was raised in the trial court prior to Appellant's first trial, and that the issue was resolved on the record. There was no testimony to the contrary.

■ Given the foregoing testimony, we affirm the trial court's ruling that no conflict of interest existed due to Pearson having briefly "stood in" as guardian *ad litem* in the DHS case. The trial court obviously found Pearson's testimony to be credible, and it was within the trial court's considerable discretion to do so. *See Smart*, 352 Ark. 522, 104 S.W.3d 386; *Cherry*, 341 Ark. 924, 20 S.W.3d 354. Because we conclude that no conflict of interest actually existed, we need only analyze the remainder of this issue to determine whether Appellant has shown that he was prejudiced, *i.e.*, whether there is a reasonable probability that, but for counsel's errors, Appellant would not have pled guilty and would have insisted on going to trial.

The State contends that we cannot make such analysis because Appellant has not included the transcript of his sentencing hearing in the record on appeal. The State argues that without the sentencing hearing, Appellant cannot show prejudice. As stated above, however, because this case involves an allegation of ineffectiveness in relation to a guilty plea, the appropriate standard of prejudice is whether, but for counsel's errors, there is a reasonable probability that Appellant would not have pled guilty and thereby waived his right to a trial. To determine this, it is not necessary to view the sentencing trial before the jury. In any event, the record in this case supports the trial court's ruling.

In his brief on appeal, Appellant concedes that his guilty plea was not coerced or involuntary in the ordinary and direct sense of those words. He further concedes that the record of his plea demonstrates that he understood what he was doing and that his plea was voluntary. He asserts, however, that his complaint is about what went on between him and his attorney prior to the morning of the plea. During the hearing below, Appellant testified that on the way over to the courthouse on the morning of the plea, he thought he mentioned to a deputy: "I don't think this is the right thing." He testified further that he did not feel that he had any choice at that point but to plead guilty. Later on, however, Appellant seemed to contradict himself, by indicating that he was not opposed to pleading guilty, only that he wanted his attorney to negotiate a lower sentence. Appellant testified:

> Like the morning he told me that we should accept the — we should do this the way I did it or else I was going to come out with

life, you know. He said, "They are going to give you life if you don't, you know, do this; and maybe they'll have mercy on you."

*I kept wanting him to come with a plea bargain down further to something I could live with.* I could live with maybe twenty or fifteen years, but forty, that's — [.] [Emphasis added.]

Pearson, on the other hand, testified that he and Appellant had discussed the possibility of pleading guilty long before the date of the plea. He testified further that the decision to plead guilty was actually made at least four days to a week before the plea was entered, not the morning of the plea. Pearson explained that following the reversal and remand from the court of appeals, Appellant had a change of heart. Prior to that time, Appellant had consistently maintained that he did not commit the crime. Following remand, however, Appellant indicated to Pearson that he thought the better approach would be to admit responsibility and put himself on the mercy of the jury in order to mitigate his sentence.

The transcript of the January 2002 plea hearing supports Pearson's testimony. During that hearing, Appellant stated that he understood that by pleading guilty he was waiving his rights, including the right to have a jury determine his guilt or innocence. Appellant told the trial court: "There's no question of guilt." He further stated that he wished to put himself on the mercy of the people. He explained his decision to the trial court:

BY THE DEFENDANT: . . .   See, I've had plenty of time. I've been down in prison and I've had a lot of time to lay there and think and I thought the reason I'm in prison is because I didn't accept responsibility for my actions. Correct?

BY THE COURT:   Don't know.

BY THE DEFENDANT:   So I've had a lot of time to think and I felt, well, if God grants me — you know, if God gets me out of here, which he did through the appeals process, then I'm going to change this a little bit. I'm going to go in there and tell them the truth and let them decide[.]

Given the foregoing evidence, Appellant has failed to demonstrate that but for counsel's alleged conflict, there was a reasonable probability that he would not have pled guilty to the

charge and would have insisted on a trial. Because Appellant has failed to show prejudice, and because we have already concluded that no actual conflict of interest existed, we affirm the trial court's denial of a new trial on this issue.

For his third and final point on appeal, Appellant argues that the trial court erred in failing to find ineffective assistance of counsel on the part of his trial attorney. He raises four separate claims of ineffectiveness: (1) counsel could not have exercised reasonable professional judgment absent a relationship of trust and confidence; (2) counsel denied matters that had been established as of record; (3) counsel failed to meet with Appellant to adequately prepare his defense; and (4) counsel advised Appellant to plead guilty, but failed to investigate potential circumstances in mitigation of his sentence. None of these issues were ruled on by the trial court.

Rather, the order reflects that besides the conflict issue, the only claims of ineffectiveness ruled on by the trial court pertained to trial counsel's failure to raise the defense of mental disease or defect and the defense of mistake of age. Accordingly, only those issues were preserved for appeal. It is well settled that an appellant must obtain a ruling on his or her argument to preserve the matter for appeal. *See, e.g., Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002); *Rutledge v. State*, 345 Ark. 243, 45 S.W.3d 825 (2001). Matters left unresolved are waived and may not be raised on appeal. *Proctor*, 349 Ark. 648, 79 S.W.3d 370.

Affirmed.

ARNOLD, C.J., not participating.