Demetrius CLARK *v.* STATE of Arkansas

CR 04-217 192 S.W.3d 248

Supreme Court of Arkansas
Opinion delivered September 23, 2004

*Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Appellant Demetrius Clark and co-defendant Booker Simmons[1] were convicted of criminal attempt to commit capital murder in a bench trial in Pulaski County Circuit Court, Seventh Division. Clark appeals, arguing that the circuit court erred in refusing to dismiss the case for lack of sufficient evidence. He also argues that the circuit court erred in denying his motion for new trial and petition for writ of error *coram nobis*. Clark further argues that the circuit court erred in denying his motion for continuance.

We find no error and, accordingly, we affirm. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d).

### Sufficiency of the Evidence

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Cummings v. State*, 353 Ark. 618, 110 S.W. 3d 272 (2003). We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the trier of fact. *See, e.g., Polk v. State,* 348 Ark. 446, 73 S.W.3d 609 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Several witnesses testified at trial. Arkansas State Trooper David Moss testified that on June 22, 2002, he was in vehicle pursuit of a White Dodge Intrepid from the interstate to the intersection of 20th and Perry Machin Streets in North Little Rock, where the driver of the vehicle abandoned the vehicle and fled on foot. Moss stated that he followed the suspect on foot into the College Park neighborhood. After losing sight of the suspect, Moss began to walk down a nearby street, believing the suspect to

---

[1] Clark and Simmons were jointly tried and convicted of attempted capital murder; however, Simmons is not a party to this appeal.

be in the immediate vicinity. Moss noticed a Chevrolet Suburban parked approximately thirty to forty yards away, and he stated that after he spotted the vehicle, the driver of the vehicle turned on the headlights and started driving the vehicle towards him, forcing him to jump out of the way in order to avoid being struck by the vehicle.

As Moss jumped out of the way of the vehicle, he observed a flash from the passenger side window. He stated that he heard a pop and then realized that he had heard a gunshot. Moss stated that he fired fourteen rounds from his pistol as the vehicle fled the scene.

Officer Richard Beaston of the North Little Rock Police Department testified that he was on patrol in the early morning hours of June 22, 2002, when he observed an SUV that came sliding around the corner somewhere around 19th Street in North Little Rock, with its headlights turned off. Beaston pursued the vehicle, which subsequently came to a stop. Beaston and Officer Chris Weaver directed the occupants to exit the vehicle, the back of which was riddled with bullet holes and shattered glass. Beaston identified Clark as being the driver of the vehicle.

Officer Mike Shahan testified that he was working in the early morning hours of June 22, 2002, when he was summoned to a traffic stop on Perry Machin involving a Chevrolet Suburban. Shahan stated that after searching the immediate vicinity of the vehicle, he found a gun in a ditch adjacent to the roadway. The gun was later identified as a Keltec 9mm pistol.

Danny Harkins, a criminal investigator for the Arkansas State Police, took possession of the gun, stored it, and transported it to the Arkansas State Crime Lab. Harkins stated that he searched the Suburban and recovered a 9mm shell casing that was found on the passenger side of the vehicle. After examining the gun and the recovered shell casing, Gary Lawrence, a firearms and toolmark examiner with the State Crime Lab, testified that he believed the shell casing was fired from the gun recovered at the scene.

Jake Jonathon Wright (Jonathon) testified that he was involved in the automobile chase with Moss on June 22, 2002. He stated that a police officer pulled him over and asked him whether he had a driver's license. According to Jonathon, when the police officer "went back to the car and checked it or whatever," Jonathon drove off and headed home. He stated that he fled because he thought there was a warrant out for his arrest. Jona-

thon, who lived with his aunt Felicia Wright (Felicia), testified that he parked his car a couple of streets over from his aunt's house because he did not want the police officer to know where he lived. He testified that he ran to his aunt's house and banged on the door so he could get in. Further, he stated that he did not see a brown Suburban parked in front of the house. Jonathon testified that after he entered his aunt's home, he looked out the window and saw a police officer running towards a stop sign and shooting a pistol. Jonathon testified that he knew Clark because Clark was a friend of his aunt. Jonathon testified that he did not know Simmons.

Felicia testified that she and Clark were dating at the time of the incident, and that she met Simmons for the first time on the night of the incident. Felicia and her friend Mary Allen were visiting with Clark and Simmons in the front yard when Jonathon telephoned Felicia and told her to open the door. Felicia testified that Jonathon did not indicate that he was being chased by the police. She further testified that Clark and Simmons left around the time Jonathon entered her house.

Mary Allen stated that Simmons is her boyfriend, and that she first met him on the night of the incident. Allen stated that she, Felicia, Clark, and Simmons were visiting in the front yard when Jonathon called Felicia to tell her to open the door. She stated that when Jonathon arrived, she went into the house with him and Felicia. Allen testified that she did not know where Simmons and Clark were when she went into the house. She testified that about two or three minutes after Simmons and Clark left, she heard gunshots.

To prove attempted capital murder in this case, the State had to show that Clark, with premeditated and deliberate purpose, attempted to cause a law enforcement officer's death when the officer was acting in the line of duty. *See* Ark. Code Ann. § 5-3-201 (Repl. 1997); § 5-10-101 (Repl. 1997); *Jarrett v. State*, 336 Ark. 526, 528, 986 S.W.2d 101, 102 (1999). A person attempts to commit an offense if he purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be. Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997).

The State's theory of the case was that Clark was an accomplice of his co-defendant Simmons. In cases where the theory of accomplice liability is implicated, we affirm a sufficiency

of the evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). A person is criminally liable for the conduct of another person when he is an accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 1997). Pursuant to Ark. Code Ann. § 5-2-403(a) (Repl. 1997), an accomplice is defined as follows:

> (a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

> (1) Solicits, advises, encourages, or coerces the other person to commit it; or

> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

> (3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

* * *

■ ■ One's presence at the crime scene or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Atkinson v. State*, 347 Ark. 336, 347, 64 S.W.3d 259, 266 (2002). Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Id.* Under the accomplice liability statute, a defendant may properly be found guilty not only of his own conduct, but also that conduct of his accomplice; when two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Finally, there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Id.*

Clark argues that there is insufficient evidence to support a conviction for attempted capital murder because there is no evidence that he personally shot at Moss. He also states that there

is no evidence that he solicited, advised, encouraged, or coerced Simmons to fire the gun. Clark claims that the State's only theory of the case is that he drove in a certain direction in order to give Simmons a clear shot at the officer; Clark contends that the State is not claiming that he tried to strike the officer with the vehicle. The State contends that its theory that Clark maneuvered his vehicle in a manner that would "provide enfilade for his accomplice's gun-fire" would alone be sufficient to support the conviction for attempted capital murder. Further, the State disputes Clark's contention that it is not claiming that Clark tried to strike the officer with the vehicle. Rather, the State contends that "[w]hile there may have been two different lethal instruments at work, *i.e.,* the vehicle and the firearm, it is clear that the two accomplices were acting in concert with one another and it is uncontroverted that [Clark] was driving the vehicle and fled the scene at a high rate of speed."

Finally, Clark states that even if the evidence is considered in a light most favorable to the State, this court must be mindful of the fact that Moss was standing in the roadway. Clark states: "To establish liability in this circumstance for the act of driving would be to impute criminal intent to murder to every driver who drives in the direction of someone standing in the road, even if the driver has the right of way." The State argues that "driving a vehicle on the roadway in a manner such that a state trooper, in uniform, illuminated in the middle of the road, must jump out of the way in order to avoid being run over, certainly presents a substantial question as to the driver's intent, all the more so when a shot is fired from the vehicle at the officer and the driver attempts to flee the scene thereafter."

█ In this case, it is clear that there was substantial evidence that Clark was not merely engaged in the "act of driving." Moss testified that the driver of the Chevrolet Suburban attempted to run him over. He stated that he observed a flash from the passenger side window and realized that he had heard a gunshot. Officer Beaston testified that he observed bullet holes and shattered glass in the back of the Suburban and, at trial, Beaston identified Clark as the driver of the vehicle. Officer Shahan stated that he recovered a gun in the immediate vicinity of the vehicle. Investigator Harkin recovered a 9 mm shell casing from the vehicle, and a firearms and toolmark examiner from the State Crime Lab testified that he believed the shell casing was fired from

the gun recovered at the scene. We hold that there is substantial evidence to support the conviction for attempted capital murder.[2]

### New Trial and Writ of Error Coram Nobis

■ Clark argues that the circuit court erred in denying his motion for new trial and petition for writ of *error coram nobis* because at his and Simmons's joint sentencing, Simmons exonerated Clark of any foreknowledge of the shooting. We begin by addressing Clark's argument concerning the denial of his motion for new trial. The decision whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *Jones v. State*, 355 Ark. 316, 136 S.W.3d 774 (2003). We will not reverse a circuit court's order granting or denying a motion for a new trial unless there is a manifest abuse of discretion. *Id.* Moreover, we will not reverse a circuit court's factual determination on a motion for new trial unless it is clearly erroneous, and the issue of witness credibility is for the circuit judge to weigh and assess. *Id.*

At the sentencing hearing, the following colloquy took place between defense counsel for Clark and Simmons:

> DEFENSE COUNSEL: I have a question. Did Demetrius Clark know you were going to fire the gun and throw it out?
>
> SIMMONS: No, sir.
>
> * * *

Clark argues that Simmons's statement during sentencing is new evidence that warrants the granting of a new trial. Clark contends that without foreknowledge of what Simmons intended to do, he could not have been Simmons's accomplice in the commission of attempted capital murder. Clark argues that he is entitled to a new trial because: (1) the verdict and sentence is now against the law and evidence, *i.e.*, the exonerative testimony of

---

[2] We must also note that Clark contends that in addition to violating the substantial evidence requirement, the conviction violates the due process guarantees of the Fourteenth Amendment and Article 2, § 8, of the Arkansas Constitution, in that upon the evidence adduced at trial, no rational fact-finder could have found proof of guilt beyond a reasonable doubt. Clark failed to raise this argument at the trial level. Arkansas law is well settled that an appellant must raise and make an argument at trial in order to preserve it on appeal, and even constitutional arguments must be presented below to be preserved for appellate review. *Keenom v. State*, 349 Ark. 381, 80 S.W.3d 743 (2002).

Simmons; and (2) the testimony of Simmons qualifies as important evidence in Clark's favor discovered subsequent to the verdict, in that Clark had no right to call Simmons as a witness or to question him until he testified at sentencing.

 We have long held that newly discovered evidence is one of the least favored grounds to justify a new trial. *Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997). To prevail, the appellant must show: (1) that the new evidence would have impacted the outcome of the case, and (2) that he used due diligence in trying to discover the evidence. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996). Even assuming that Simmons's statement is "new evidence," we find no manifest abuse of discretion in the circuit court's denial of the motion for new trial because Clark has failed to demonstrate that the "new evidence" would have impacted the outcome of the trial.

As previously stated, the issue of witness credibility is for the circuit court to assess. *See Jones, supra*. From the circuit court's denial of the motion for new trial, we may infer that the circuit court found that Simmons's statement would not have impacted the outcome of the case because the circuit court did not find Simmons to be a credible witness. Further, we must note that in this case, the State presented two theories of criminal liability: (1) Clark facilitated the commission of the offense by driving in a certain direction to give Simmons a clear shot; and (2) Clark attempted to strike Moss with the vehicle. In the motion for new trial, Simmons's statement was offered to refute the State's first theory of liability. Even if Simmons's statement were found to be credible and would have impacted the outcome of the case on the State's first theory of liability, Clark does not explain how this statement would have impacted the outcome of the case under the State's second theory of liability. Since we have determined that Clark failed to demonstrate that Simmons's statement would have impacted the outcome of the case, we need not address the issue of whether Clark used due diligence in trying to discover the evidence.

 We now turn to Clark's argument concerning the circuit court's denial of his petition for writ of error *coram nobis*. The standard of review of the denial of a petition for writ of error *coram nobis* is whether the circuit court abused its discretion in denying the writ. *See Cloird v. State*, 357 Ark. 446, 182 S.W.3d 477 (2004). A writ of error *coram nobis* is an exceedingly narrow remedy, appropriate only when an

issue was not addressed or could not have been addressed at trial because it was somehow hidden or unknown and would have prevented the rendition of the judgment had it been known to the trial court. *Brown v. State*, 330 Ark. 627, 955 S.W.2d 901 (1997); *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984) (citing *Troglin v. State*, 257 Ark. 644, 519 S.W.2d 740 (1975)). This remedy is available only where there is an error of fact extrinsic to the record, such as insanity at the time of trial, a coerced guilty plea or material evidence withheld by the prosecutor, that might have resulted in a different verdict. *See Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). The writ has also been used in cases in which a third party confessed to the crime during the time between conviction and appeal. *Larimore, supra; Davis, supra.*

Here, Clark claims that the circuit court erred in denying his petition for writ of error *coram nobis* because Simmons's statement, under oath and subject to cross-examination, qualifies as a third-party confession to the offense since it admits facts underlying the criminal liability of Simmons and specifically exonerates Clark.

First, we do not believe that Simmons's statement qualifies as a "third-party confession" because Simmons is not a third party to the crime. A third-party confession occurs when "a person confesses to a crime after another has been found guilty of that same crime." *Penn v. State*, 282 Ark. 571, 574, 670 S.W.2d 426, 428 (1984). Both Simmons and Clark were convicted of attempted capital murder.

We further disagree with Clark's contention that Simmons's statement "specifically exonerates[3] Clark." Defense counsel asked: "Did Demetrius Clark know you were going to fire the gun and throw it out?" Simmons answered "No, sir." Since defense counsel asked a compound question, it is unclear whether: (1) Simmons was answering "no" to both parts of the question; (2) Simmons was stating that Clark did not know Simmons was going to fire the gun; or (3) Simmons was stating that Clark did not know that Simmons was going to throw the gun, which belonged to Clark's mother, out the window of the vehicle. Even if we viewed Simmons's statement as a third-party confession, it is for the circuit

---

[3] Even if Simmons's statement specifically exonerates Clark with respect to the firing of the gun, the fact remains that the statement does not refute the State's theory that Clark attempted to strike Moss with the vehicle.

court to assess the credibility of the confession. "Obviously, the complete circumstances surrounding the statement and all the available evidence should be carefully scrutinized before a writ is granted." *Penn*, 282 Ark. at 577, 670 S.W.2d at 429. We cannot say that the circuit court abused its discretion in denying Clark's petition for writ of error *coram nobis*.

### Motion for Continuance

Clark argues that the circuit court erred in denying his motion for continuance. In his motion filed on the day of trial, Clark stated that he needed additional time to hire his own crime scene investigator, that he would "probably hire a ballistics expert," that he needed to subpoena certain persons within the administration of the State Police concerning policies of force and pursuit, and that if given additional time, he would be able to locate two missing witnesses. Clark concedes that he failed to comply with Ark. Code Ann. § 16-63-402(a) (1987), which provides:

> (a) A motion to postpone a trial on account of the absence of evidence shall, if required by the opposite party, be made only upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant himself believes them to be true and that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement.

We have consistently interpreted this statute as requiring the presence of an affidavit in order to justify a continuance due to a missing witness. *Cloird v. State*, 314 Ark. 296, 862 S.W.2d 211 (1993); *King v. State*, 314 Ark. 205, 862 S.W.2d 229 (1993). The denial of a continuance when a motion is not in substantial compliance with the statute is not an abuse of discretion, and the burden is on the appellant to establish prejudice and abuse of discretion in denying the continuance. *Cloird, supra.*

When deciding whether a continuance should be granted, the following factors are to be considered by the circuit court: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but

also that the appellant believes them to be true. *Green v. State*, 354 Ark. 210, 118 S.W.3d 563 (2003).

 By omitting the affidavit, Clark failed to show his diligence in attempts to locate the two missing witnesses. In addition, without the expected testimony of the missing witnesses and those witnesses that he had not yet hired, Clark can hardly demonstrate that he was prejudiced by the denial of the continuance. We hold that circuit court did not abuse its discretion in denying Clark's motion for continuance.

Affirmed.