SLIP OPINION

Cite as 2017 Ark. 31

# SUPREME COURT OF ARKANSAS

No. CR-16-427

| | |
|---|---|
| DERRICK GERADE LAMBERT<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** February 16, 2017<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-15-2]<br><br>HONORABLE SAM POPE, JUDGE<br><br><u>AFFIRMED; COURT OF APPEALS OPINION VACATED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant Derrick Gerade Lambert was convicted by a Drew County jury of one count of felon in possession of a firearm, and he was sentenced to a term of four years' imprisonment in the Arkansas Department of Correction. After trial, Lambert filed a motion for new trial, which was denied. For reversal, Lambert contends that the circuit court erred in denying his motion for directed verdict because the State failed to present sufficient evidence that he possessed the firearm. He further contends that the circuit court erred in denying his motion for new trial because the State withheld exculpatory evidence from the defense.[1] We find no error and affirm.

---

[1]Lambert originally appealed to the court of appeals, which affirmed. *See Lambert v. State*, 2016 Ark. App. 229, 490 S.W.3d 325. Lambert then petitioned this court for review, and we granted the petition. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *E.g.*, *Schneider v. State*, 2015 Ark. 152, 459 S.W.3d 296.

I. *Sufficiency of the Evidence*

A person who has been convicted of a felony is prohibited from possessing or owning any firearm. Ark. Code Ann. § 5-73-103(a)(1) (Repl. 2016). Lambert conceded at trial that he is a convicted felon, but he argued in his directed-verdict motion that the State failed to present sufficient evidence that he possessed a firearm. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *E.g.*, *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 451 S.W.3d 565. The evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Id.*, 451 S.W.3d 565.

The following evidence was presented at trial. At approximately 2:00 a.m. on December 11, 2014, Special Agent John Carter of the Tenth Judicial Drug Task Force initiated a traffic stop of a Chevrolet Tahoe for having no rear license plate. The vehicle was driven by Misty Johnson. Alex Harrington was a front-seat passenger, and Lambert was sitting in the backseat on the passenger side. While Carter spoke with Johnson and obtained her license and information, Lambert opened the rear passenger door and tried to exit the vehicle. Carter told Lambert to stay in the vehicle. Meanwhile, Officer Ben Michel arrived on the scene to assist with the traffic stop. Carter asked Johnson to step out of the vehicle and then advised Michel to "keep an eye on" Harrington and Lambert. Michel stated that, while he watched the vehicle, he did not see anyone "pass anything around the car" and

that he "didn't see anything handed from the front to the back." Carter testified that he did not see Harrington turn around in his seat and reach over the backseat. Carter further testified he observed Lambert moving around a lot inside the vehicle.

Carter requested consent from Johnson to search the Tahoe. Johnson testified that she consented to the search. She also testified that both Lambert and Harrington had told her not to allow the search. While searching the vehicle, Michel pulled down the backseat armrest and saw a gun. Johnson denied that the gun belonged to her and said that she had no idea how or when the gun was placed in the vehicle. Lambert denied that the gun belonged to him. He maintained that the gun had been placed under the armrest by Harrington, the front-seat passenger.

On appeal, Lambert contends that this evidence failed to prove that he possessed the firearm. A conviction for violating section 5-73-103(a)(1) may be based on actual or constructive possession. *See, e.g.*, *Jones v. State*, 355 Ark. 630, 144 S.W.3d 254 (2004). In this case, the State relied on a theory of constructive possession. Constructive possession of contraband means knowledge of its presence and control over it. *See Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976); *see also United States v. Roberts*, 953 F.2d 351, 353 (8th Cir. 1992) (noting that "constructive possession" has been defined as "knowledge of presence plus control"). Possession may be imputed when the contraband is found in a place that is immediately and exclusively accessible to the accused and subject to his or her dominion and control, or to the joint dominion and control of the accused and another. *Cary*, 259 Ark. 510, 534 S.W.2d 230.

SLIP OPINION



Joint occupancy of a vehicle may raise an inference of constructive possession of contraband, but it is insufficient, by itself, to establish that possession. *See Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003). There must be some additional factor linking the accused to the contraband. *Id.*, 131 S.W.3d 734. Among the factors this court has considered in cases involving vehicles occupied by more than one person are (1) whether the contraband was found on the same side of the car seat as the accused was sitting or in near proximity to him and (2) whether the accused acted suspiciously before or during the arrest. *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *see also Loggins v. State*, 2010 Ark. 414, 372 S.W.3d 785 (noting that an accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession).

In the present case, the State presented sufficient evidence to establish that Lambert constructively possessed the contraband. Although there was joint occupancy of the vehicle, the State presented other evidence linking Lambert to the gun. The gun was found in the backseat where Lambert had been the sole passenger. The compartment in which the gun was found was immediately and exclusively accessible to Lambert. Moreover, Lambert behaved suspiciously before and during the traffic stop. He told Johnson not to allow the officers to search the vehicle, he exited the vehicle before the police could approach it, and he moved around a lot inside the vehicle. We conclude that substantial evidence supports Lambert's conviction for felon in possession of a firearm and that the circuit court did not err in denying Lambert's motion for directed verdict.

II. *Motion for New Trial*

SLIP OPINION

Lambert next contends that the circuit court erred in denying his motion for new trial because the State withheld exculpatory evidence from the defense. The decision whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *E.g.*, *Clark v. State*, 358 Ark. 469, 192 S.W.3d 248 (2004). We will not reverse a circuit court's order granting or denying a motion for a new trial unless there is a manifest abuse of discretion. *Id.*, 192 S.W.3d 248.

Lambert alleged in his motion that the prosecutor had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the State to disclose all favorable evidence that is material to the guilt or punishment of an individual. Specifically, he alleged that the State failed to disclose an exculpatory statement by Harrington, the front-seat passenger in the vehicle during the traffic stop. Harrington was subpoenaed by both the State and the defense to testify at Lambert's trial. Harrington failed to appear at trial. Lambert alleged that the State suppressed testimony favorable to him because the State told Harrington the day before trial that he was not required to appear and testify.

At the hearing on Lambert's motion for new trial, Harrington testified that he had received a subpoena to appear as a witness for the State at Lambert's trial. He further testified that a day or two before trial, he met with the prosecuting attorney, who asked him whether his story would be the same as it had been at a prior revocation hearing. Harrington told the prosecutor that he would testify at trial that neither he nor Lambert had a gun. According to Harrington, after his meeting with the prosecutor, someone from the prosecutor's office called his mother and told her that he had been released from his

subpoena. Harrington acknowledged that he had also been subpoenaed by the defense, but he stated that he did not go to court because the prosecutor's office "said I was released, that I didn't have to go." On cross-examination, the State questioned Harrington about his testimony from his previous revocation hearing. Harrington agreed that, at the prior hearing, he had testified that he did not know there was a gun in the back console.

Carol Strickland, Harrington's mother, also testified. Her mother-in-law, Cheryl Jefferson, worked at the prosecutor's office. According to Strickland, Jefferson called her the day before trial and told her that Harrington "didn't have to show up for court cause it was over with for him." Strickland also testified that, on the day of trial, police officers came to her home looking for Harrington and told her that he needed to be in court. Strickland and Harrington went to the prosecutor's office and spoke with assistant Amy Evans, who confirmed that the State had released Harrington from its subpoena. Evans testified that she checked the clerk's file to see whether defense counsel had issued a subpoena for Harrington. She stated, "I looked on the Clerk's file, computer that we have access to to [sic] see if a subpoena had been file marked with the Clerk, and I did not see one."[2] Evans testified that she had not told Harrington, nor had she told anyone to tell Harrington, that he did not have to come to trial if he was subpoenaed by the defense. After the hearing, the circuit court denied the motion, finding that Harrington's testimony would not have made a difference in the outcome of the trial.

---

[2]The record reflects that the subpoena was filed with the clerk on July 27, 2015, five days after trial.

On appeal, Lambert contends that, as a result of the State's suppression of evidence favorable to him, he was "denied a fair opportunity to present exculpatory eye witness testimony that he did not have a gun, denying him a fair trial." He also contends that the circuit court erred in ruling that Harrington's testimony would not have made any difference, because "the credibility of witnesses is an issue for the fact finder."

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

In the present case, even assuming that the State suppressed Harrington's statement, Lambert cannot show that he was deprived of a fair trial due to the unavailability of Harrington's testimony. *See, e.g., Murchison v. State*, 249 Ark. 861, 462 S.W.2d 853 (1971) (stating that, when considering a motion for new trial on the ground that evidence was suppressed, the primary focus of the inquiry is to determine whether, in light of the circumstances, the defendant has been deprived of a fair trial by the unavailability to him of the particular testimony). At the hearing on the motion for new trial, Harrington stated that he would have testified at trial that he never saw Lambert with a gun. Harrington also stated that he had told the prosecutor's office that neither he nor Lambert had a gun. Johnson, the driver, testified at trial that she had not seen Lambert with a gun. Harrington's testimony that Lambert did not have a gun would have been cumulative to the testimony of Johnson.

Here, Lambert has failed to demonstrate prejudice because there was not a reasonable probability that the outcome of the trial would have been different if Harrington had testified. We hold that the circuit court did not abuse its discretion in denying Lambert's motion for new trial.

Affirmed; court of appeals opinion vacated.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority's conclusion that there was no *Brady* violation because Alex Harrington's testimony would have been "cumulative" is simply wrong. The statements by the three occupants of the vehicle differed markedly.

Misty Johnson testified that she neither saw a gun nor did she see anyone put the gun behind the armrest. Johnson's testimony tended to exonerate her completely, partially exonerate Harrington, and left open the possibility that Lambert could have possessed the gun and possibly placed it behind the armrest. Lambert testified that he saw Harrington with the gun and saw Harrington conceal it in the armrest. His testimony exonerated him and Johnson, but implicated Harrington. Harrington's testimony at the hearing on Lambert's new-trial motion exonerated Lambert and him, but tended to implicate Johnson, who was the driver and car owner of the vehicle. This testimony was not "cumulative" under any analysis.

Resolving the issue of which witness or witnesses were telling the truth and which witness or witnesses were lying is exclusively within the province of the jury. Allowing the

State to deny the jury all of the relevant testimony so that it can do its job denies Lambert one of our most fundamental constitutional rights—the right to a fair trial.

I respectfully dissent.

BAKER, J., joins.

*John F. Gibson, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.