BRANDON J. HARRISON, Judge
This case turns on whether the State proved that Allen Bradley, who was already a felon, constructively possessed a Glock semiautomatic 9 mm pistol on 16 February 2017 in violation of Ark. Code Ann. § 5-73-103(c)(1)(A) (Repl. 2016). A police officer found a gun inside a cardboard box that was either near or within a shed approximately twenty yards from where Bradley was arrested in the backyard of a jointly occupied house. After a bench trial, the circuit court convicted Bradley of being a felon in possession of a firearm. The court sentenced Bradley to twenty years' imprisonment in the Arkansas Department of Correction and four years' suspended imposition of sentence. Bradley appeals the conviction and argues that the record does not sufficiently support it. We agree that the State did not sufficiently prove that Bradley constructively possessed a firearm in violation of the law and therefore reverse the conviction.
*571 I.
An alleged domestic disturbance at a house in Little Rock, to which police officers were dispatched, ended with Bradley's arrest and the State charging him with six offenses: a felon possessing a firearm; felony aggravated assault on household or family member; felony aggravated assault (two counts); felony third-degree battery; and a criminal-mischief misdemeanor.
We pick up the story with the on-scene police officers telling the circuit court about finding Bradley in the backyard of the house to which they had been called. And we confine our summary of the evidence to the firearm-possession charge for reasons that will become clear in due course.
During the bench trial, Little Rock police officer Timothy Pope testified that Bradley did not have a gun on his person when he was arrested in the backyard. According to Officer Pope, Bradley was arrested "probably 25 feet from the back door-25 yards or so from the back door of [the] house." The 9 mm handgun, according to Officer Pope, "was found in the backyard right outside the back door" by Officer McGuire.
On cross-examination, Officer Pope said that he had talked to two people in the front yard, but he did not speak with people who were inside the house. He said an older teenager, a preteen, and a "younger baby" were inside the house. When asked, the officer agreed that other people could have been in the backyard before he arrested Bradley. When asked by defense counsel where Officer McGuire found the gun, Officer Pope said, "I don't know where he found it. There was-once you go out the back door, there's a small shed. I did see the small shed in the backyard[.]" Officer Pope could not say how far the shed was from the back door of the house. Officer Pope said that he did not see Bradley with the gun, did not see anyone find the gun, and did not test the gun to see if Bradley had touched it. Bradley, according to Officer Pope, was "exiting the area" but was not running when he was arrested in the backyard.
Little Rock police officer Steve McGuire said that he found a Glock pistol "in a metal storage building behind the residence and it was inside of a cardboard box." He agreed that "it was visible from outside that building" and "in the backyard of the residence." Officer McGuire identified State's exhibit no. 4 as a picture of the gun inside an open cardboard box. When Officer McGuire found the gun, there was a round in the chamber and a loaded magazine in it. Photographs of the magazine were admitted as State's exhibit nos. 5 and 6. The officer also identified the open cardboard box in which the gun was found as State's exhibit no. 7; and the gun itself was marked State's exhibit no. 8. Officer McGuire did not participate in taking Bradley into physical custody because he was "across the yard" at the time. According to Officer McGuire, Bradley's arrest occurred twenty yards from where the gun was located.
On cross-examination Officer McGuire said that he never saw Bradley touch the weapon, that there were several people in the house when the police arrived, that he did not know the nature of the relationship Bradley had with the residents, and that the gun he recovered was never tested for fingerprints.
Officer Tony Nativi testified too. He said he did not know the number of people in the house or their ages, but there were some children "in their teenage years." He did not see Bradley possess a gun or hurt anyone while he was there.
*572 Detective Aaron Oncaen was the fourth law-enforcement officer to testify. He filled out an arrest-disposition form for Bradley on 16 February 2017. The detective said that he had completed a Miranda rights form the same day on Bradley's behalf. When asked, he agreed that Bradley had indicated that his address was the same one as the house where he was arrested. The Miranda form itself was not introduced as evidence during the trial.
II.
After listening to extensive arguments by the parties' counsel and dismissing five of the six counts the State had filed against Bradley, the circuit court denied Bradley's motion to dismiss the felon-in-possession charge. At the close of all the evidence, the court was then faced with determining whether the State had met its burden of proof that Bradley had unlawfully possessed a firearm, which at the time of the decision was wholly based on a constructive-possession theory. On the possession charge, the court made the following ruling from the bench:
The Court finds that the State has met its burden of proof as to count one on the charge of possession of firearms by certain persons based upon the proof that the Glock firearm located in the rear of the defendant's residence 5019 Frazier Pike was located in an area from which the defendant was seen by police officers to have been fleeing or running. It was located in close proximity in time from the time that the defendant was being pursued. It was located in an open space, in an area near where defendant was apprehended.
Those factors not only are sufficient to persuade the Court that the firearm was possessed by the defendant but those factors dispel other possibilities with regard to the possession of that firearm at the point in time inasmuch as all other persons who have been identified during the course of the trial were on the opposite side of the residence except for the person identified as children who under the proof were testified to have been inside the residence.
Inasmuch as the defendant was a resident of 5019 Frazier Pike, was the person identified in the vicinity of the firearm that was apprehended, the Court finds that the State has met its burden of proof and finds the defendant guilty of possession of firearm by certain persons.
III.
The circuit court convicted Bradley of possessing the firearm based on circumstantial evidence. Consequently, we must consider whether the evidence indicated Bradley's guilt and excluded all other reasonable hypotheses about who may have possessed or controlled the gun. White v. State , 2014 Ark. App. 587, at 4, 446 S.W.3d 193, 196. Whether circumstantial evidence excludes every other reasonable hypothesis is a decision for the fact-finder; but when the evidence leaves the fact-finder to speculate and conjecture, a conviction cannot stand. Id.
Arkansas Code Annotated section 5-73-103, absent exceptions that do not apply here, prohibits a convicted felon from possessing or owning a firearm. Ark. Code Ann. § 5-73-103 (Repl. 2016). It is undisputed that Bradley was a convicted felon before the arrest and conviction in this case; his prior felony convictions were admitted into evidence during the bench trial without objection. The only point in dispute was whether he possessed the Glock pistol in violation of the law. A conviction for violating section 5-73-103(a)(1) may be based on actual or constructive possession.
*573 Lambert v. State , 2017 Ark. 31, 509 S.W.3d 637. This is a constructive-possession case as presented to this court. To constructively possess contraband means knowing it is present and having control over it. Id. at 3, 509 S.W.3d at 640 (citing United States v. Roberts , 953 F.2d 351, 353 (8th Cir. 1992) ) (noting that "constructive possession" has been defined as "knowledge of presence plus control"). Possession may be imputed when the contraband is found in a place that is immediately and exclusively accessible to the accused and subject to his or her dominion and control, or to the joint dominion and control of the accused and another. Id. Control and knowledge can be inferred from the circumstances, like the proximity of the contraband to the accused, whether it is in plain view, and who owns the property where the contraband is found. Nichols v. State , 306 Ark. 417, 815 S.W.2d 382 (1991). An accused's suspicious behavior, coupled with physical proximity to the contraband, can indicate possession. Pokatilov v. State , 2017 Ark. 264, at 4, 526 S.W.3d 849, 854.
In Williams v. State , this court held that there was not enough evidence to convict on a firearm-possession charge when the defendant was outside an apartment when police arrived, and he was already in custody when police found the gun-under a bed, inside the apartment. 94 Ark. App. 440, 236 S.W.3d 519 (2006). The State presented no testimony on who had placed the gun under the bed or whether Williams had slept in the same bedroom where the gun was found. This court went so far as to note that no evidence was presented that Williams had slept on the same side of the bed as the gun was found. In fact, the State did not even establish that Williams was the person who placed the gun inside the apartment. The gun, moreover, was not found with Williams's personal effects; and neither the weapon nor the ammunition found in the apartment was tested for fingerprints. Finally, the State did not prove that Williams was the subject of a weapon-disturbance call. Id.
The holes in the proof in Williams are strikingly similar to this case. As in Williams , the State presented some circumstantial evidence of constructive possession; but it did not foreclose, beyond speculation and conjecture, every other reasonable hypothesis of Bradley's guilt. The police officers said that multiple people had access to the house and its curtilage when Bradley was arrested. That means multiple people had access to the areas where the gun was found. No witness explained Bradley's relationship to the people in the house. That Bradley indicated in a Miranda form that the house where he was arrested was his "residence" does not in and of itself establish a constructive possession under the law because, even had Bradley resided in the house, the State still had to link him to the gun located on the jointly occupied premises. (The State does not contest that the house was jointly occupied.)
Apart from the Miranda form, Bradley was not closely tied to the house, much less to the Glock 9 mm pistol found near (or inside) the shed. In addition to what we have already noted, no one, for example, testified that utility bills in Bradley's name (or any other mail) were sent to the house. See Harjo v. State , 2017 Ark. App. 337, at 4, 522 S.W.3d 839, 843 (police officers testified that they were familiar with defendant and had prior knowledge that he lived at that address and bills in his name were found in the bedroom along with men's clothing). No one produced any proof that Bradley held some property interest in the house. No one produced evidence of a lease agreement (oral or written) in Bradley's name. Regarding the gun's location, it was not found in an indoor common area *574 but was spotted in an outside area, inside an open cardboard box that was itself near (or inside) an unlocked shed.[1] Compare Cook v. State , 2010 Ark. App. 726, 379 S.W.3d 618 (defendant's mere presence when police find contraband in a shed behind a house is insufficient to show constructive possession), with Lueken v. State , 88 Ark. App. 323, 198 S.W.3d 547 (2004) (affirming conviction when appellant was arrested outside while working on a vehicle with drug paraphernalia on his person, he shared a residence with roommate, and police officers found drug material in kitchen and laundry room area and a bedroom and bathroom).
The circuit court placed a premium on Bradley's proximity to the gun. But in caselaw terms, Bradley was not particularly close to the gun when he was arrested. See Standridge v. State , 310 Ark. 408, 837 S.W.2d 447 (1992) (holding that defendant's fingerprint found on plastic cup beside tent that was six to fifteen feet from marijuana plants did not support constructive possession).
No one testified about who used the storage building, for what purposes, or for how long; and, again, it was undisputed from the police officers' testimony that multiple people had access to the backyard and the shed areas. See Argo v. State , 53 Ark. App. 103, 105, 920 S.W.2d 18, 20 (1996) (reversing felon-in-possession charge when there were four people standing near a car but no one was occupying the car where the gun was found; the defendant did not have exclusive access to the gun nor did he exercise any control over it; the gun was not found on his person or with his personal effects; and he did not own the vehicle in question or exercise control over it).
There is more. The State presented no forensic evidence, like a fingerprint analysis, to link Bradley to either the gun or the ammunition. No proof regarding to whom the gun was originally sold was provided either. Nor was there any testimony, which we may consider, that Bradley had a history of gun ownership, possession, or use (recreational or otherwise). Finally, police officers did not recover any personal items that may have linked Bradley to the metal shed, the gun, or the house. In summary, the State did not establish a connection between Bradley and the gun to a degree that could move a fact-finder beyond speculation and conjecture.
The State invites us to affirm Bradley's conviction based on testimony and documentary proof that was excluded by the circuit court pursuant to Bradley's Confrontation Clause argument. U.S. Const. amend. VI. The State's position is that all the evidence presented to the circuit court during the trial may be included in our sufficiency review. It is generally true that we may consider evidence that has been improperly admitted to determine an appellant's sufficiency point on appeal, e.g., Campbell v. State , 2017 Ark. App. 59, 512 S.W.3d 663, but we do not consider evidence that was excluded from the record. Some more background will put the State's request into context.
In this case the alleged adult victims who initially called 911 and summoned the police to 5019 Frazier Pike on 16 February 2017 did not testify at trial. Although the circuit court initially admitted as evidence a computer-aided dispatch printout of a 911 emergency call from the house (over objections), and permitted the responding officers to testify about what the callers or *575 victims had told them (over objections) the court later reconsidered its decision and excluded the testimony and the 911 document based on Bradley's arguments that the evidence should be excluded under the Sixth Amendment's Confrontation Clause. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."). We read the circuit court's ruling to mean that it excluded much of the State's evidence-including the 911 call log, related notes, and the alleged victims' statements to police and emergency operators-as violations of Bradley's constitutional right to confront his accusers. The circuit court then dismissed every charge the State had filed against Bradley except the felon-in-possession charge, which we have already addressed.
The State has not attempted to cross-appeal the circuit court's adverse Confrontation Clause ruling. Consequently, we have decided this appeal based on the evidence the circuit court received during the bench trial. In the circumstances, we respectfully decline the State's invitation to consider the evidence that the circuit court excluded when it applied Bradley's federal constitutional right to confront his accusers to the case. The Confrontation Clause may as well be written in disappearing ink if we were to do what the State asks on this record.
IV.
Having viewed all the admitted evidence in the light most favorable to the State, we hold that the State did not present substantial evidence to support the conviction on offense 1 of the criminal information. The circuit court's conviction on offense 1 ( Ark. Code Ann. § 5-73-103(c)(1)(A) ) is therefore reversed. We remand the case so the court can enter an amended sentencing order consistent with this opinion.
Reversed and remanded.
Abramson and Brown, JJ., agree.

The record is not clear on whether the Glock-in-a-box was inside the shed or outside the shed.