SHAWN A. WOMACK, Associate Justice *358 Pending before this court is petitioner Michael Dashun Jackson's pro se petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. Jackson's claims for coram nobis relief are based on allegations that the prosecutor withheld material evidence in violation of Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Jackson was convicted of capital murder, criminal attempt to commit capital murder, and aggravated robbery with a firearm enhancement, and sentenced to life in prison without parole. We affirmed. Jackson v. State , 2011 Ark. 9, 429 S.W.3d 176.
In his petition, Jackson alleges that the prosecution withheld evidence that the investigating detective, Dane Pedersen, had coerced Tina Jefferson into providing testimony implicating Jackson in the crimes; that the prosecution failed to disclose a videotaped pretrial statement provided to investigators by Jackson's codefendant, Cherick Coleman; and that the prosecution withheld evidence that a third party, Charles Bullock, was arrested and found in possession of a weapon involved in the crimes. A review of the direct-appeal record demonstrates that the material evidence alleged to have been withheld by prosecutors was known to the defense at the time of Jackson's trial, and Jackson has failed to demonstrate a Brady violation or to otherwise establish a basis for coram nobis relief. Accordingly, we deny the petition to procced in the trial court with a coram nobis petition.
The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. Roberts v. State , 2013 Ark. 56, 425 S.W.3d 771. A writ of error coram nobis is an extraordinarily rare remedy. Id. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. Id. ; Westerman v. State , 2015 Ark. 69, 456 S.W.3d 374. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. Roberts , 2013 Ark. 56, 425 S.W.3d 771. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. Id.
The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. Id. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. Id. ; Howard v. State , 2012 Ark. 177, 403 S.W.3d 38.
Here, Jackson asserts that material evidence was withheld by the prosecutor in violation of Brady . There are three elements of a Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, *359 either willfully or inadvertently; (3) prejudice must have ensued. Carner v. State , 2018 Ark. 20, 535 S.W.3d 634 (citing Strickler v. Greene , 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ). When determining whether a Brady violation has occurred, it must first be established by the petitioner that the material was available to the State prior to trial and that the defense did not have it. Id.
Jackson's first allegation of a Brady violation involves the allegedly coerced testimony of his cousin, Jefferson. Jackson attaches an affidavit executed by Jefferson stating that Pedersen had detained her and threatened that the prosecutor would move to revoke her probation, which would result in a twenty-year prison sentence unless she assisted in the conviction of Jackson.[1] She further asserts in the affidavit that she had informed Jackson and his counsel of the threats made by Pedersen prior to Jackson's trial. This particular allegation contained in Jefferson's affidavit undermines Jackson's Brady claim in that it demonstrates that the defense was aware of the facts set forth in the affidavit at the time of trial, and it cannot be said that such material was available to the State but not to the defense. Id.
Furthermore, the direct-appeal record demonstrates that Jefferson was cross-examined at great length with regard to the alleged threats made by Pedersen if she had failed to testify. Clearly, the allegations contained in Jefferson's affidavit were well known by Jackson and his trial counsel at the time of the trial. A fundamental requirement for coram nobis relief is the discovery of exculpatory information that was extrinsic to the record, that is, it was unknown to the defense and was not brought forward before rendition of the judgment. Roberts , 2013 Ark. 56, 425 S.W.3d 771. The alleged coercion of Jefferson does not constitute a fact that was extrinsic to the record, nor does it support Jackson's claim of a Brady violation. Howard , 2012 Ark. 177, 403 S.W.3d 38.
Jackson's second basis for coram nobis relief involves an allegation that portions of pretrial statements made by Coleman to Pedersen had been videotaped but were not made available to the defense. A review of the direct-appeal record reveals that the existence of another videotaped statement by Coleman was contested at trial. Coleman had testified that he spoke with Pedersen for thirty to forty minutes before he provided a videotaped statement, while Pedersen testified that the entire interview had been videotaped. Jackson attaches to his petition Pedersen's testimony in this regard. Jackson asserts that those portions of Coleman's pretrial interview referenced in Pedersen's testimony were not disclosed by the prosecution and that the failure to disclose the existence and content of a second videotaped statement was prejudicial in that the allegedly missing videotaped statement contained exculpatory or impeaching evidence. Jackson also alleges that Pedersen had made promises to Coleman in exchange for his testimony and attaches to his petition Coleman's testimony wherein Coleman asserted that Pedersen had promised him that he would be considered only a witness to the crimes and not a suspect if Coleman provided a statement to investigators describing the crimes and the participants.
Jackson fails to provide sufficient evidence that a second videotaped statement was extant nor does he describe the exculpatory or impeaching evidence that *360 would have been contained therein. Claims without a factual basis are not grounds for the writ. Carner , 2018 Ark. 20, 535 S.W.3d 634 ; see also McCullough v. State , 2017 Ark. 292, 528 S.W.3d 833, reh'g denied (Dec. 14, 2017) (the burden is on the petitioner in the application for coram nobis relief to make a full disclosure of specific facts relied upon and not to merely state conclusions as to the nature of such facts). Furthermore, while Coleman testified that portions of his interview with Pedersen had not been videotaped, he affirmed that any statements made to Pedersen during the course of the entire interview were consistent with his testimony implicating Jackson. Again, the possible existence of a second videotape of Coleman's interview and any promises made to Coleman during the course of the interview were matters that were addressed at the time of Jackson's trial. Evidence that promises were made to Coleman in exchange for his cooperation was considered by the jury before it rendered its guilty verdict.
Finally, Jackson alleges that the prosecution withheld material evidence with respect to Bullock, who was found in possession of the victim's gun during a traffic stop and arrested as a result.[2] Jackson contends that the information that Bullock was found in possession of the gun constituted material exculpatory evidence in that it would have provided evidence that Bullock was the true perpetrator. Again, the direct-appeal record contradicts Jackson's claims. The record reveals that Pedersen testified that the victim's gun had been "recovered during an unrelated traffic stop." Moreover, the record further demonstrates that Bullock was present and ready to testify on behalf of the State at the end of the first day of Jackson's trial and was instructed by the court to return the following morning. However, Bullock was not called as a witness on the second day of the trial. Nevertheless, Pedersen's testimony, describing the recovery of the victim's gun in an unrelated incident, and the identification of Bullock as a witness for the State shows that the circumstances surrounding the discovery of the victim's gun were known to the defense at the time of trial. Furthermore, because Bullock was designated as a witness for the State, the prosecution was obligated to provide his name and address to the defense prior to trial. See Ark. R. Crim. P. 17.1 (2009). Like his first two claims, Jackson's allegations regarding Bullock and the victim's gun fail to establish either a Brady violation or a fundamental error of fact extrinsic to the record. Roberts , 2013 Ark. 56, 425 S.W.3d 771.
Petition denied.
Jackson raised this same allegation in his petition for postconviction relief pursuant to Rule 37.1 (2011). His petition was denied by the trial court, and we affirmed. Jackson v. State , 2013 Ark. 19, 2013 WL 298081 (per curiam).