Erik James BULLOCK *v.* STATE of Arkansas

CR 01-884                                      111 S.W.3d 380

Supreme Court of Arkansas
Opinion delivered June 12, 2003

*Hurst & Morrissey, P.L.L.C.*, by: *Q. Byrum Hurst, Jr.*, and *Travis J. Morrissey*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *Leon Holmes*, for *amicus curiae* Arkansas Right to Life.

ANNABELLE CLINTON IMBER, Justice. Appellant Erik James Bullock was one of four defendants charged with capital murder in the death of Heaven Pace, a fetus in its ninth month of gestation, and first-degree battery of the mother, Shiwona Pace.[1] He was charged and convicted of both charges for which he received a sentence of life imprisonment without the possibility of parole plus twenty years, to run concurrently. The points of error raised by Bullock either are procedurally barred or have no merit, and we affirm.

Shiwona Pace became pregnant while she and Bullock were dating. She believed Bullock was the father and told him about the

---

[1] The prosecutor filed a two-count felony information against Bullock, Lonnie Beulah, and his two brothers (Eric Deshawn Beulah and Derrick Lamont Witherspoon) that alleged the "four defendants committed capital murder by causing the death of Heaven Pace, an unborn fetus, by beating of the fetus's mother, Shiwona Pace, and further committed first-degree battery against Shiwona Pace by beating her so severely as to cause the miscarriage or stillbirth of the fetus." *Beulah v. State*, 344 Ark. 528, 529, 42 S.W.3d 461, 462-63 (2001); *see also Beulah v. State*, 352 Ark. 472, 101 S.W.3d 802 (2003).

pregnancy. Because Bullock did not want to be a father, he hired three other men to beat Shiwona so as to cause the miscarriage or stillbirth of Heaven Pace, an unborn fetus. Late on the evening of August 26, 1999, he lured Shiwona back to his house where three of his accomplices were lying in wait for the contemplated victim. During the assault, Shiwona was choked, slapped around, kicked in the back and stomach, and one of the assailants put a gun in her mouth. The beating lasted about twenty minutes.

When the attackers left, Shiwona called 911, whereupon she was taken immediately by ambulance to the hospital. Following her admission to the hospital, doctors investigated the well-being of the fetus. No fetal heart tones were found. Shiwona had contusions over her entire abdomen, and a CT scan showed that she had suffered a ruptured spleen during the attack. As a result of this finding, a laparotomy, or abdominal surgery, became necessary. Because the fetus was not alive, Shiwona's treating physician performed an emergency Caesarian section that culminated in the delivery of a stillborn female fetus. The doctors then proceeded with the laparotomy. Besides the ruptured spleen and the stillborn fetus, Shiwona sustained other injuries — fractures in her left wrist and hand, as well as contusions and bruises on the left side of her head.

Upon being charged with capital murder and first-degree battery as a result of the events that occurred on August 26, 1999, Bullock retained an attorney, Darrell F. Brown, to represent him in the criminal case. Several months later, Bullock and his defense counsel began to have serious disagreements such that Attorney Brown filed a motion to be relieved as counsel and Bullock filed a *pro se* motion to be relieved of legal counsel. The circuit judge conducted a hearing on the matter and denied both motions.

The case was tried on February 7-8, 2001, with Attorney Brown serving as trial counsel for Bullock.[2] The jury found Bullock guilty of capital murder and first-degree battery. He was sentenced to life in prison without the possibility of parole plus twenty years, to run concurrently. He appeals and raises four points of error: (1) the trial court erred in refusing to relieve Attorney Brown as counsel; (2) the trial court erred in allowing

---

[2] According to the transcript, two other attorneys, Ronald L. Davis, Jr., and Al Shay, also represented Bullock at the trial.

Shiwona Pace's stillborn fetus to be referred to by the name Heaven Pace; (3) Act 1273 of 1999, the Arkansas Fetal Protection Act, now codified at Ark. Code Ann. § 5-1-102 (Supp. 1999), is unconstitutional on its face and as applied to Bullock; and (4) the Arkansas Fetal Protection Act violates Bullock's right to equal protection and due process. We affirm.

### 1. Motion to Relieve Counsel

For his first argument on appeal, Bullock contends that the trial court erred in refusing to relieve his attorney of record, Darrell F. Brown. Upon review of a trial court's denial of counsel's motion to withdraw, or a motion to relieve counsel, we uphold the lower court's ruling in the absence of an abuse of discretion. *Davis v. State*, 308 Ark. 481, 825 S.W.2d 584 (1992).

On May 4, 2000, Attorney Brown filed his motion to be relieved as counsel, and shortly thereafter, Bullock filed a similar motion requesting that Attorney Brown be dismissed only if the court ordered an adequate refund of fees paid in advance. At that time, Bullock's case was set for trial on June 19, 2000. The hearing on both motions was held on May 15, 2000,[3] and the trial court entered an order denying both motions on May 17, 2000.

Attorney Brown cited Rule 1.16(b) of the Model Rules of Professional Conduct as the basis for his request to be relieved, stating that counsel considered Bullock's course repugnant or imprudent, and that despite reasonable warning, Bullock failed to substantially fulfill an obligation to him. In addition, counsel asserted that his continued representation would result in an unreasonable financial burden on him, but that he had taken reasonable steps to avoid foreseeable prejudice to Bullock. In his *pro se* motion, Bullock responded that Attorney Brown did not have grounds to be discharged under Rule 1.16. In any event, according to Bullock, Attorney Brown had refused to perform as promised with the initial down payment to secure his services through trial and Bullock's family to "be billed for the remainder of the balance." Bullock's motion asked the court to order Attorney Brown to perform his promised duties, or in the alternative, to

---

[3] The record does not contain a transcript of the hearing on May 15, 2000.

relieve Attorney Brown and order him to partially refund any advance payment of fees.

On appeal, Bullock claims that Attorney Brown was subject to a conflict of interest such that he should have been relieved as counsel. Specifically, Bullock contends there was a conflict regarding Attorney Brown's possible pecuniary interests in the case and whether the amounts paid by Bullock to Attorney Brown were sufficient and reasonable to retain him throughout the entire trial process. In concluding his argument on the point, Bullock states that the trial court's denial of his motion "materially prejudiced [him] in having effective representation of his choosing."

We start by observing that a defendant's right to counsel of choice is grounded in the Sixth Amendment to the United States Constitution, and is also guaranteed by Art. 2, § 10, of the Arkansas Constitution. While constitutionally guaranteed, the right to counsel of one's choosing is not absolute, and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Clements v. State*, 306 Ark. 596, 817 S.W.2d 194 (1991). Moreover, once competent counsel is obtained, any request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *Id.* Additionally, once an appellant has accepted representation by an attorney, the fact that he is dissatisfied with counsel's efforts does not entitle him to appointment of a different attorney. *Franklin v. State*, 327 Ark. 537, 939 S.W.2d 836 (1997) (per curiam).

It is true that the United States Supreme Court has held that where a constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). We review a trial court's ruling on disqualification of counsel for an abuse of discretion. *Wilburn v. State*, 346 Ark. 137, 56 S.W.3d 365 (2001) (applying the civil standard to criminal proceedings). The cornerstone principle in all conflict cases is whether prejudice will result to the client as a result of the conflict of interest. *Id.* As with any claim of ineffective assistance of counsel, the petitioner has the burden of providing factual support to demonstrate that the conflict of interest adversely affected

counsel's performance. *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001).

■ Here, Bullock retained Attorney Brown to represent him, and then one month before the scheduled trial date of June 19, 2000, both counsel and Bullock filed motions to have Attorney Brown relieved as legal counsel. Neither motion asserted that Attorney Brown had acted incompetently. In fact, the circuit court noted that "Mr. Darrell Brown is an extremely capable criminal defense lawyer." While Bullock's motion did set forth certain differences between himself and his counsel regarding the fee arrangement, it did not expressly state that his attorney's representation was compromised by a conflict of interest. In denying the motions, the court considered the length of time this matter had been pending and the proximity of the trial date. Moreover, we are left to rank speculation about whether Bullock's counsel was hampered or impaired in any respect by a purported conflict of interest. *Wilburn v. State, supra.* We cannot say that under these facts the circuit court abused its discretion.

## 2. Reference to Unborn Fetus by Name

Bullock was charged with capital murder in the death of an unborn fetus under the Arkansas Fetal Protection Act, which defined "person," for purposes of the state's homicide statutes, to include a fetus beyond twelve weeks of development. *See* Ark. Code Ann. § 5-1-102(13)(B)(i)(b) (Supp. 1999). The information filed by the State identified the fetus as Heaven Pace. On the morning of trial, Bullock moved in limine to prohibit any reference to the unborn fetus by name, arguing that the "child has never been legally named Heaven," and that "it's prejudicial." The prosecutor responded that the fetus's mother, Shiwona Pace, had decided to name her baby Heaven Pace long before the assault happened. Because the State had to be able to identify the victim to the jury, the prosecutor intended to refer to the unborn fetus as Heaven Pace. The circuit court denied Bullock's motion in limine, thereby allowing the State to refer to the unborn fetus by name.

On appeal, Bullock challenges the propriety of the State referring to the unborn fetus as Heaven Pace under Ark. R. Evid. 403 (2003). Bullock argues that referring to the unborn fetus by name had no probative value and in no way provided the jury a

better understanding of the evidence. In addition, he contends that the name was used to invoke sympathy, thus increasing the prejudice against him. Moreover, Bullock maintains that the fetus could have been referred to in other ways, such as "the person," "the victim," or "the baby."

■ ■ Rule 403 makes otherwise relevant evidence inadmissable if its probative value is substantially outweighed by the danger of unfair prejudice. We start by noting that Bullock's reliance upon *Smith v. State*, 19 Ark. App. 188, 718 S.W.2d 475 (1986) (en banc), and *Golden v. State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984), for the proposition that the probative value of evidence correlates inversely to the availability of other means of proving the issue for which the prejudicial evidence is offered, is misplaced. We overruled the *Golden* decision in *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001), and in doing so effectively overruled *Smith*. In evidentiary determinations, a trial court has wide discretion, and we do not reverse a ruling on the admission of evidence absent an abuse of discretion. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

■ We cannot say that the circuit court abused its discretion in denying Bullock's motion in limine. The fetus was at term at the time of death, the fetus had been named, and the name was included in the criminal information. Accordingly, we affirm the trial court on this point.

### 3. Constitutionality of the Arkansas Fetal Protection Act

In his final two points on appeal, Bullock attacks the constitutionality of Act 1273 of 1999, the Arkansas Fetal Protection Act, now codified at Ark. Code Ann. § 5-1-102 (Supp. 1999). He maintains that, because the Act does not relate to the viability of a fetus, it is unconstitutional. In addition, Bullock argues that because Heaven Pace was conceived prior to the enactment of Act 1273, and because he was the first individual to be prosecuted under the act, the law as applied to him is in violation of due process.

On March 31, 2000, Bullock filed a motion to adopt by reference a codefendant's motion challenging the constitutionality of Act 1273. The circuit court eventually held a hearing on November 8, 2000, and denied the motion. However, the record does

not include a transcript of the hearing on November 8, 2000, or a file-stamped copy of the court's order. Furthermore, there is no indication in the abstract or the record before us that the arguments he now presents on appeal were made below. Indeed, the codefendant's motion that Bullock adopted by reference is not included in the record on appeal.[4]

We will not consider arguments, even constitutional ones, that are made for the first time on appeal. *Jones v. State*, 347 Ark. 409, 64 S.W.3d 728 (2002). The record fails to reveal what arguments were made below, and as such we do not know if Bullock's arguments on appeal were first presented to the circuit court. In addition, it is the appellant's duty to present a record on appeal demonstrating error. *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). Bullock failed to present a record or abstract on appeal that informs this court of the arguments made below. Failure to produce a critical document on appeal precludes our consideration of any issue concerning it. *See Watson v. State*, 329 Ark. 511, 951 S.W.2d 304 (1997). Thus, we are precluded from reaching the merits of his constitutional claims.

For the foregoing reasons, the convictions and sentences are affirmed. The record has been reviewed for other reversible error, as required by Supreme Court Rule 4-3(h), and none has been found.

Affirmed.

CORBIN, J., not participating.

---

[4] The original record in this case was lodged with the clerk on August 14, 2001. Over the course of the next eighteen months, the State filed two separate motions requesting compliance with Ark. Sup. Ct. R. 4-3(h). A reconstructed record was filed on April 26, 2002, and Bullock obtained at least five extensions of time to file his opening brief and three extensions of time to file a reply brief. On December 19, 2002, we granted the motion of Arkansas Right to Life, Inc., to file an *amicus curiae* brief. Finally, on March 24, 2003, after the State pointed out the deficiency in the record, Bullock filed a motion to supplement the record with the pleading that was purportedly adopted by reference and denied by the circuit court. His motion to supplement failed to indicate whether the pleading in question had ever been filed in his circuit court case. Without that information, this court was unable to conclude that the document had been erroneously omitted from the reconstructed record. Consequently, we denied Bullock's motion to supplement the record on April 17, 2003.