Cite as 2023 Ark. App. 306

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & IV
### No. CR-22-644

| | |
|---|---|
| TYLER AUSTIN LUCAS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered May 24, 2023<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-21-135]<br><br>HONORABLE CREWS PURYEAR, JUDGE<br><br>REVERSED AND DISMISSED |

**CINDY GRACE THYER, Judge**

Appellant Tyler Lucas was charged with one count of possession of methamphetamine with purpose to deliver[1] and one count of possession of a Schedule VI controlled substance (marijuana). An Ashley County jury found him guilty of both counts and sentenced him to twenty-five years in the Arkansas Department of Correction. Lucas filed a timely notice of appeal and now argues that the circuit court erred in denying his motions for directed verdict.

Motions for directed verdict are challenges to the sufficiency of the evidence. *Dougan v. State*, 2023 Ark. App. 75, 660 S.W.3d 375. When reviewing the denial of a directed-verdict

---

[1]The original charge of possession of methamphetamine with purpose to deliver was filed as a Class A felony; however, after subsequent testing revealed the weight of the methamphetamine to be less than ten grams, the State amended the count to a Class B felony.

motion, this court will look at the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and will affirm if there is substantial evidence to support the jury's conclusion. *Id*. Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other and permits the trier of fact to reach a conclusion without having to resort to speculation or conjecture. *Id*.

Except as provided by law, it is unlawful if a person possesses methamphetamine or a Schedule VI controlled substance, such as marijuana, with the purpose to deliver it. Ark. Code Ann. § 5-64-420(a) (Supp. 2021) (possession of methamphetamine with intent to deliver); Ark. Code Ann. § 5-64-436(a) (Repl. 2016) (possession of marijuana with intent to deliver); Ark. Code Ann. § 5-64-215(a)(1) (Supp. 2021) (defining marijuana as a Schedule VI controlled substance). To "possess" means "to exercise actual dominion, control, or management over a tangible object." Ark. Code Ann. § 5-1-102(15) (Supp. 2021).

At issue in this appeal is whether the State offered sufficient evidence to prove that Lucas "possessed" the methamphetamine and marijuana. Under Arkansas law, possession may be established by proof of actual possession or constructive possession. *Martin v. State*, 2019 Ark. App. 509, 587 S.W.3d 623. Lucas's conviction was premised on constructive, rather than actual, possession. Constructive possession is the control of or right to control the contraband. *Matlock v. State*, 2015 Ark. App. 65, 454 S.W.3d 776. Constructive possession may be established by circumstantial evidence and can be inferred where the contraband is found in a place immediately and exclusively accessible to the defendant and

subject to his control. *Szczerba v. State*, 2017 Ark. App. 27, 511 S.W.3d 360. However, while constructive possession may be established by circumstantial evidence, when such evidence alone is relied on for conviction, it must indicate guilt and exclude every other reasonable hypothesis. *Davis v. State*, 2023 Ark. App. 133, 661 S.W.3d 738. Whether circumstantial evidence excludes every other reasonable hypothesis is a decision for the fact-finder; but when the evidence leaves the fact-finder to speculate and conjecture, a conviction cannot stand. *Bradley v. State*, 2018 Ark. App. 586, 564 S.W.3d 569.

With these principles in mind, we examine the evidence presented by the State in its case-in-chief. At trial, the State's first witness was Tad Huntsman, a narcotics investigator with the Ashley County Sheriff's Department. Huntsman explained that on June 17, 2021, he and other officers came into contact with Lucas at his father's house in Crossett. Lucas was asleep in a lawn chair under the carport when officers arrived. When Huntsman woke him up, he appeared to be "under the influence" because he was slurring his words. According to Huntsman's testimony, other officers were with him,[2] and there was ultimately a search of "a vehicle that belonged to the defendant."[3]

The evidence that was seized from the vehicle--exhibit 1, four separate baggies containing a green leafy substance; and exhibit 2, three bags containing a white crystalline substance--was introduced without objection. Exhibit 2, the bags containing suspected

---

[2]None of the other officers who were with Huntsman testified at Lucas's trial.

[3]The descriptive statement "a vehicle that belonged to the defendant" was part of the State's questioning, not Huntsman's answer.

methamphetamine, was collected from the front driver's side floorboard directly under the steering wheel; exhibit 1 was collected from the passenger's seat. When asked what exhibit 1 was, Huntsman replied that it was marijuana. He explained that he came to that conclusion on the basis of his experience and training. The State asked what things he looked for in determining whether a substance is marijuana; Huntsman answered, "It's a green leafy substance that has a distinct smell."

The State then asked about the way the marijuana was packaged. Huntsman said it was bagged individually into four separate bags, which, in his experience, indicated that it had been packaged for distribution or sale. Noting his prior experience in buying drugs in his undercover work, Huntsman said that he had never weighed drugs during the course of a purchase; instead, the person selling the drugs would have them already "packaged and ready to go," like the marijuana and methamphetamine in exhibits 1 and 2 were packaged. He opined that in his experience and training, Lucas possessed the drugs for the purpose of delivering them.

On cross-examination, Huntsman acknowledged that the truck where the drugs were found was about twenty yards away from where Lucas was sleeping, noting it was parked close to the road with the windows down. Huntsman did not recall finding the keys to the truck, either in the vehicle or on Lucas's person. Huntsman also conceded that he did not run the tags on the truck. Rather, he said he had seen Lucas driving the truck and "just kn[e]w it to be his vehicle," although he had not seen him in that truck the day the drugs were discovered.

The State's only other witness was Christy Williford, a forensic chemist from the Arkansas State Crime Laboratory. Williford testified that the substance found in the floorboard of the truck was methamphetamine. She did not test the "green vegetable material" found on the passenger seat.

The State then rested, and Lucas moved for a directed verdict, arguing that the State had not proved that he was in actual or constructive possession of the methamphetamine or the marijuana. The circuit court denied Lucas's motion for directed verdict, noting it was required to view the evidence in the light most favorable to the State at that juncture. Regarding the issue of possession, the court noted that the material was taken from a truck that had "been identified as being operated by Tyler Lucas at some point." Lucas then rested and renewed his motion, which the court again denied.

Lucas filed a timely notice of appeal and now argues on appeal that the circuit court erred in denying his motions for directed verdict. More specifically, he argues that the State failed to prove that (1) he was in actual or constructive possession of the contraband; (2) the "leafy green" material found in the truck was marijuana; and (3) the possession was with a purpose to deliver. We agree with Lucas's first argument on appeal.

As noted above, constructive possession can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Loggins v. State*, 2010 Ark. 414, 372 S.W.3d 785. Moreover, constructive possession may be established by circumstantial evidence, but when such evidence alone is relied on for a conviction, it must indicate guilt and exclude every other reasonable hypothesis. *Davis*,

2023 Ark. App. 133, 661 S.W.3d 738. Circumstantial evidence is evidence from which a fact may be inferred. *Taylor v. State*, 2017 Ark. App. 331, 522 S.W.3d 844.

Here, the State's case was premised entirely on circumstantial evidence. Neither of the State's two witnesses testified that the contraband was found in a place immediately and exclusively accessible to Lucas and subject to his control. The drugs were not found on Lucas's person; rather, they were found in a truck parked on property owned not by Lucas but by his father. The truck was found in the driveway close to the road, with the windows down. Lucas was not in the vehicle; he was found passed out in a lawn chair approximately twenty yards away. The drugs were found in plain sight—the methamphetamine was found on the floorboard under the steering wheel and the marijuana was just lying on the passenger's seat.

Moreover, there was no evidence regarding the ownership of the truck. Investigator Huntsman conceded that he did not run the plates on the vehicle to determine ownership; instead, he testified that he "just knew" it to be Lucas's truck because he had seen him driving it before. The State failed to present any other evidence that the truck belonged to Lucas. The truck could just as easily have belonged to Lucas's father since it was parked on his property. There was no evidence concerning when Lucas last drove the vehicle or even whether he was the last person to have driven the vehicle. The truck was found unlocked, and the keys were not found on Lucas's person. In fact, there was no evidence that the keys were ever located. Thus, there was no evidence that the truck was in Lucas's sole, exclusive possession.

In *Argo v. State*, 53 Ark. App. 103, 920 S.W.2d 18 (1996), this court reversed a felon-in-possession-of-a-firearm conviction. The evidence introduced in that case showed that police officers encountered the appellant and his brothers standing outside of a vehicle. The appellant was holding an ax handle, and one of the brothers was holding a machete, which he tossed into the vehicle. When an officer went to retrieve the machete, he observed a shotgun in the front seat. At trial, the officer testified that no one was in the vehicle when he retrieved the shotgun, no one admitted owning it, and the vehicle belonged to the wife of one of the brothers. In addition, the officer testified that the vehicle was not locked, one door was open, and a window was down. Finally, the officer testified that he did not see the appellant in actual possession of the shotgun. This court reversed the conviction, holding that the appellant "was not occupying the vehicle where the gun was found, he did not have exclusive access to the gun nor did he exercise any control over it, the gun was not found on his person or with his personal effects, and he did not own the vehicle in question or exercise control over it." *Argo*, 53 Ark. App. at 105, 920 S.W.2d at 20.

Likewise, here, Lucas was not occupying the truck where the drugs were found. The doors were unlocked and the windows rolled down. The truck was parked close to the road. The keys were never found. Thus, there was no evidence that the truck––and, concomitantly, the drugs found therein––was in Lucas's sole, exclusive possession. We therefore hold that the evidence was insufficient to show that Lucas constructively possessed the drugs. Accordingly, we reverse Lucas's conviction.

Reversed and dismissed.

KLAPPENBACH, WOOD, and HIXSON, JJ., agree.

ABRAMSON and GLADWIN, JJ., dissent.

**ROBERT J. GLADWIN, Judge, dissenting**. Today, the majority reverses and dismisses the conviction of a three-time-convicted drug felon.[1] In doing so, the majority substitutes its judgment for the judgment of a jury that found the evidence sufficient to convict. Because it is not our job to reweigh the evidence or to speculate about evidence that was not presented, I dissent.

When the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict, viewing the evidence in light most favorable to the State. *LeFever v. State*, 91 Ark. App. 86, 208 S.W.3d 812 (2005). Furthermore, "a jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct." *Walley v. State*, 353 Ark. 586, 594, 112 S.W.3d 349, 353 (2003). With these principles in mind, the facts of this case are very simple. Officer Tad Huntsman, a narcotics investigator, approached the appellant, who was asleep in a lawn chair in his father's carport. Huntsman recognized appellant's truck, which was parked approximately twenty yards from the appellant with the windows open. When the officers woke Lucas, he appeared to be "under the influence." A search of appellant's truck produced three bags of methamphetamine and four bags of marijuana. A

---

[1]The appellant was previously convicted of possession of drug paraphernalia to manufacture in Ashley County Circuit Court case No. 02CR-17-71; and possession of methamphetamine or cocaine with the purpose to deliver in Ashley County Circuit Court case No. 02CR-19-32.

8

chemical analysis confirmed the presence of 2.6593 grams of methamphetamine. Huntsman testified that the quantity of drugs was more than for personal use.

When possession of contraband is an element of the offense, the State is not required to prove literal physical possession. *Braswell v. State*, 2022 Ark. App. 102. Constructive possession can be inferred when the contraband was found in a place immediately and exclusively accessible to the accused and subject to his control. *Id.* To prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Id.* The defendant's control over and knowledge of the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where ethe contraband is found, and the accused's suspicious behavior. *Id.*

The majority's analysis begins with a discussion of the circumstantial evidence concerning constructive possession. Of course, all constructive-possession cases involve circumstantial evidence. The majority states that neither witness testified that the contraband was found in a place immediately and exclusively accessible to Lucas or subject to his control; however, the drugs were some twenty yards from the defendant—found in plain view—in a vehicle known to be his. If the majority wishes to establish as a matter of law that twenty yards is too great a distance to establish constructive possession, it should so hold. If not, then the distance between the accused and the drugs is a question of fact for the jury to determine whether appellant was in constructive possession.

9

The majority places a significant emphasis on the testimony concerning ownership of the truck. This analysis is misplaced and simply wrong. Officer Huntsman testified that "he knew" the truck belonged to Lucas. This testimony was admitted without objection, and the jury was free to accept it. Is the majority holding that a law enforcement officer must "run the tags" of a vehicle before he or she can properly identify it? Is it holding that a lay person cannot identify the vehicle of another? Virtually any person could identify the vehicle of a relative or neighbor. This would be admissible evidence. The ownership of a vehicle is not the equivalent of the vehicle being subject to a person's control. Drug traffickers often use rented or stolen vehicles to transport drugs.

The majority cites *Argo v. State*, 53 Ark. App. 103, 920 S.W.2d 18 (1996), in support of reversal. *Argo* is easily distinguishable from our facts. In *Argo*, there was testimony that the vehicle belonged to the wife of one of the brothers who was arrested; however, the undisputed testimony here was that the vehicle belonged to appellant. Those facts are for the jury to weigh and either accept or reject. Furthermore, there were four people in *Argo* who had equal access to the vehicle while, in the present case, only Lucas was near the truck.

In order to reverse this case, the majority speculates that while Lucas was passed out in his father's carport, some unknown person or persons happened by and threw seven bags of methamphetamine and marijuana into a vehicle owned by another unknown person that coincidently was parked twenty yards from him, who remained oblivious to this activity. I submit this is not a reasonable hypothesis, nor was any evidence presented to even suggest such conjecture.

I strongly adhere to the principle that juries are the best fact-finders, and appellate judges should not reweigh the evidence. Because this case should be affirmed, I dissent.

Abramson, J., joins.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.