Cite as 2026 Ark. App. 226

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-25-269

| | | |
|---|---|---|
| | | Opinion Delivered April 8, 2026 |
| DERECK GOLDEN | | |
| | APPELLANT | APPEAL FROM THE DREW |
| | | COUNTY CIRCUIT COURT |
| | | [NO. 22CR-24-114] |
| V. | | |
| | | HONORABLE CREWS PURYEAR, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Dereck Golden appeals after he was convicted by a Drew County Circuit

Court jury of possession of a controlled substance—Schedule I or II methamphetamine,

cocaine, or heroin less than two grams. He was sentenced as a habitual offender to serve 180

months' incarceration. On appeal, appellant argues that (1) there was insufficient evidence

to support the verdict, and (2) the circuit court abused its discretion in denying his motion

for continuance and failed to consider his best interest in doing so. We affirm.[1]

---

[1]We note that appellant's statement of the case and facts does not meet the
requirements set out in Arkansas Supreme Court Rule 4-2(a)(6), which provides that the
appellant's brief "shall contain a concise statement of the case and the facts without
argument" and "shall identify and discuss all material factual and procedural information
contained in the record on appeal." Here, the statement of the case consists of eight short
sentences basically stating that appellant was charged, tried, and convicted. Clearly, this is
woefully deficient and ordinarily merits rebriefing. However, Rule 4-2(b) allows an appellee's
brief to supplement the statement of the case if the appellee believes it to be insufficient,
which the State did in this case. Therefore, we are not ordering rebriefing *this time* because

## I. *Relevant Facts*

Appellant was charged by felony information with possession of a controlled substance—Schedule I or II methamphetamine, cocaine, or heroin less than two grams, a Class D felony, in violation of Arkansas Code Annotated section 5-64-419 (Repl. 2024). The State further stated that appellant's sentence should be enhanced because he is a habitual offender pursuant to Arkansas Code Annotated section 5-4-501 (Repl. 2024). Appellant was found indigent, and the public defender's office was appointed to represent him. A jury trial was held on March 5, 2025.

Two days before trial, on March 3, 2025, a private attorney, Priscilla Copelin-Neeley (Ms. Neeley), filed a "Limited Entry of Appearance." Ms. Neeley stated that she was entering her appearance during the pretrial phase only until it was clear that a trial was required. On the same day, the circuit court filed an order denying Ms. Neeley's limited entry of appearance, stating that the Arkansas Rules of Criminal Procedure do not permit such an appearance and that, even if permitted, such an appearance would be inapplicable since appellant's jury trial was in two days. The circuit court further stated that the public defender's office was to continue its representation of appellant.

The next day, on March 4, 2025, several motions were filed. Ms. Neeley filed a motion for continuance. She explained that she had been retained, was filing her entry of

---

it is not in the interest of judicial economy to do so. *See Walton v. State*, 2023 Ark. App. 409, 677 S.W.3d 216. That said, we strongly caution the parties to closely read the rules applicable to appeals and follow them to avoid a rebriefing order.

appearance, and requested a continuance because she had not had time to prepare for trial. Less than an hour later, appellant's counsel, Joseph P. Mazzanti III with the public defender's office, also moved for a continuance. In his motion for a continuance, Mr. Mazzanti stated that appellant told him that he had hired private counsel to represent him and that he had paid her a substantial sum. Believing that Ms. Neeley had been hired for the trial because she had filed the earlier motion, Mr. Mazzanti requested a continuance. Approximately twenty minutes later, Ms. Neeley filed her conditional amended entry of appearance stating that her entry of appearance was "being conditioned on this matter being continued in order to allow counsel reasonable time to prepare for litigation, AND with counsel having a good faith basis in relying on this matter being continued, due to this court having previously recused from any and all criminal matters associated with counsel."

Shortly after midnight on the day of trial, March 5, 2025, Ms. Neeley filed an amended motion for a continuance. She realleged and incorporated any statements made in her previous motion for continuance and her amended entry of appearance. She further asked the circuit court to recuse itself as it had previously done in other cases in which she was counsel, grant a continuance of the trial, and reschedule the matter for an omnibus hearing.

The morning of trial, Judge Robert B. Gibson III recused himself and transferred the case to Judge Crews Puryear. Ms. Neeley did not appear in court. Judge Puryear, who presided over the proceedings that day, noted for the record that Ms. Neeley had emailed the court the night before asserting that she was not legally obligated to appear and that she

would not be in court that day. Mr. Mazzanti appeared on behalf of appellant and asked that appellant be granted a continuance to allow him to proceed with counsel of his choice. He asked that appellant be placed under oath so appellant could answer any additional questions. The State objected to any request for a continuance. The State argued that appellant had waited until just before trial to obtain new counsel and that Ms. Neeley conditioned her entry of appearance on being granted a continuance but never asked that she be *substituted* as appellant's counsel.

To ascertain what caused the delay in hiring Ms. Neeley, the circuit court placed both appellant and Jennifer Parker, appellant's fiancée, under oath. Appellant testified that Ms. Parker had hired Ms. Neeley using money that his family provided. He claimed that it took his family "a little while to get the money together." Appellant explained that he believed that Ms. Neeley was hired on February 25, 2025. He claimed that Ms. Neeley was given a $5,000 retainer after appellant's boss gave him a $2,500 advance. Appellant admitted that he had never spoken with Ms. Neeley. Appellant further claimed that he had desired to hire an attorney "from the beginning" but was unable to do so because he did not have the money and "was on drugs." He also stated that he had been incarcerated for the last ninety-five days due to a "parole hold" in another case. Appellant admitted that he had never signed anything with Ms. Neeley giving her permission to enter an appearance on his behalf but would do so as soon as he was able to see her. He said he had no source of income "other than [his] boss and [his] family."

Ms. Parker testified that she thought she had hired Ms. Neeley on February 28, 2025. She explained that she gave Ms. Neeley $2,500 and that "the rest had to be monthly [pre]-dated checks." She had signed the contract. Upon further questioning, Ms. Parker admitted that she had never spoken to Ms. Neeley personally but had only spoken with Ms. Neeley's assistant. She further admitted that there was a discussion at Ms. Neeley's office about the jury trial needing to be continued if Ms. Neeley was hired. Ms. Parker stated that she "assum[ed] Judge Gibson would get off the case . . . [and] everything would kind of start over." Ms. Parker explained that she was aware that Judge Gibson ordinarily recused himself from Ms. Neeley's cases before she contacted Ms. Neeley's office. She said that although she spoke to one other attorney, that attorney would not agree to a payment plan like Ms. Neeley's.

The circuit court first addressed Ms. Neeley's amended entry of appearance conditioned upon her motion for a continuance being granted. It explained that it had considered the factors announced by the supreme court in *Arroyo v. State*, 2013 Ark. 244, 428 S.W.3d 464. Specifically, the circuit court explained that any change in counsel must be balanced against the public's interest in the prompt dispensation of justice and that the right to counsel may not be manipulated or subverted to obstruct the orderly procedures of the court. The circuit court found that Ms. Neeley's filings appeared to be for the purpose of delay and to "interfere with [the] fair, efficient, and effective administration of justice." The circuit court also found that Ms. Neeley's motion for a continuance filed at 3:44 p.m. the day before trial was untimely. Moreover, the circuit court found that because appellant

5

had previously been out of custody for approximately five months and failed to hire private counsel until the week of trial, appellant contributed to the delay in hiring Ms. Neeley. The circuit court also noted that all witnesses for both the State and the appellant were present, and the jury panel had been called. In light of these facts, the circuit court held that the factors weighed in favor of denying Ms. Neeley's entry of appearance.

The circuit court then addressed Mr. Mazzanti's motion for a continuance. Mr. Mazzanti stated that he was unaware of any animosity between him and appellant and that he was prepared to move forward. That said, he explained that it is clear that appellant was serious about hiring a private attorney and that his motion is filed "upon [his] belief that it would be in [appellant's] best interest . . . to have the extra time to go ahead and hire the attorney that [appellant] chooses," even if it is not Ms. Neeley. The circuit court disagreed and noted that appellant was charged with only one Class D felony that had been unresolved for eight months. The circuit court also noted that crime-laboratory witnesses were present, that both the State and appellant had witnesses present, and that Mr. Mazzanti was ready for trial. After considering the aforementioned facts, the circuit court denied the motion for a continuance.

At trial, Officer Jaden Richardson with the Monticello Police Department testified that he was contacted by Drug Task Force Agent Ben Michel on July 17, 2024, to assist in searching a car registered to appellant. During the search, Officer Richardson found a bag of methamphetamine stuffed inside the cover of an electronic tablet lying behind the

6

passenger seat. Officer Richardson's body camera footage of the search was admitted and played for the jury.

Agent Michel testified that the substance found by Officer Richardson tested positive for methamphetamine. Agent Michel explained that the substance was found in appellant's vehicle, weighed "[h]alf a gram," and was a usable amount. He sent the substance to the Arkansas State Crime Laboratory for testing. Although appellant was not in the vehicle during the search, Agent Michel had previously seen appellant driving that vehicle. He had not seen any other individual in the vehicle.

Haley Pijor with the Arkansas State Crime Laboratory testified that the substance found in appellant's vehicle tested positive for methamphetamine and weighed 0.1983 grams without any of the packaging.

After the State rested, appellant's counsel moved for directed verdict. Counsel argued that the State failed to prove that appellant was in possession of methamphetamine because there was "no evidence from anyone that places [appellant] inside the vehicle at any time either before or after the search was conducted," and there is no evidence of actual possession or constructive possession. The State disagreed, and the circuit court denied the motion.

Appellant's fiancée, Jennifer Parker, testified that the tablet was hers and that she had left it in the car approximately two days before appellant's arrest. However, she said that she did not know anything about the methamphetamine. On cross-examination, Ms. Parker admitted that appellant had been driving the car during the two days leading up to his arrest.

7

After the defense rested and at the conclusion of all evidence, appellant's counsel renewed his motion for directed verdict, which the circuit court again denied. The jury found appellant guilty of possession of methamphetamine. During the sentencing phase, the State introduced evidence of appellant's prior convictions to prove that he is a habitual offender. The jury recommended that he be sentenced as a habitual offender to serve fifteen years' imprisonment, which the circuit court imposed. This appeal followed.

## II. *Standard of Review*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is for the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra*.

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

### III. *Sufficiency of the Evidence*

As charged in this case, a person commits possession of a controlled substance when he or she possesses methamphetamine, heroin, or cocaine weighing less than two grams. Ark. Code Ann. § 5-64-419(b)(1)(A) (Repl. 2024). A defendant does not need to be physically present when contraband is discovered for the State to prove possession because the State is not required to prove literal physical possession. *See Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. Possession of contraband can be proved by constructive possession, which is the control or right to control the contraband. *Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849. Constructive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). In cases involving joint occupancy of the premises where contraband is found, some additional factors must be present linking the accused to the contraband. *Pokatilov*, *supra*; *see also Lewis v. State*, 2023 Ark. 12; *Lambert v.*

9

*State*, 2017 Ark. 31, 509 S.W.3d 637. In such cases, the State must prove two elements: (1) that the accused exercised care, control, or management over the contraband and (2) that the accused knew the matter possessed was contraband. *Carter v. State*, 2010 Ark. 293, 367 S.W.3d 544. This control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.*

Appellant argues that there was insufficient evidence to prove he possessed the methamphetamine because he was not in the vehicle when the contraband was found, and he was "not seen in constructive possession of the substance." He compares the facts of this case to those in *Lucas v. State*, 2023 Ark. App. 306, 669 S.W.3d 266. We disagree because the facts in *Lucas* are distinguishable.

In *Lucas*, the contraband was found in a truck parked on Lucas's father's property. Lucas was passed out in a chair twenty yards away. Notably, there was no evidence introduced that Lucas either owned the truck or had driven it recently. That is not the case here. The State introduced testimony that appellant owned the vehicle in which the methamphetamine was found and that appellant had been driving the vehicle for at least two days preceding the discovery of the methamphetamine. Although Ms. Parker testified that she had left her tablet in the vehicle approximately two days before appellant's arrest, she denied any knowledge of the methamphetamine that was discovered inside the vehicle. Therefore, after considering the evidence in the light most favorable to the State and only the evidence that supports the verdict as we must, we hold that the facts here are sufficient

to establish that appellant possessed the methamphetamine found in appellant's vehicle. *See Gibout v. State*, 2024 Ark. App. 568, 702 S.W.3d 404. Accordingly, we affirm on this point.

IV. *Motion for a Continuance*

Appellant additionally argues that the circuit court abused its discretion in denying his motion for continuance and failing to consider his best interest in doing so. He complains that the circuit court had "no concrete proof" his motion for continuance was filed in an effort to delay and prevent the court from holding trial. Appellant complains that he could not have filed a motion for continuance until he had the funds to hire Ms. Neeley, which was not until the Friday before trial. Appellant further claims that the circuit court "did not thoughtfully weigh the reasons why [he] requested" a motion for a continuance and consider his best interest. We disagree.[2]

A continuance should be granted only upon a showing of good cause. Ark. R. Crim. P. 27.3. The circuit court retains broad discretion to grant or deny a motion for continuance for purposes of obtaining new counsel. *Arroyo, supra*; *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003). The circuit court's denial of a motion for continuance will not be overturned absent an abuse of that discretion. *Crabtree v. State*, 2025 Ark. App. 248, 713 S.W.3d 81. To establish an abuse of discretion, the appellant must demonstrate that the

---

[2]The State argues that appellant's argument is not preserved because appellant mistakenly references only the motion for continuance filed by Ms. Neeley and not the motion filed and argued by appellant's counsel. Because appellant's counsel essentially adopted the motion for continuance filed by Ms. Neeley and because both motions argued that a continuance was needed to allow appellant to proceed with private counsel, we address appellant's arguments on appeal.

circuit court acted improvidently, thoughtlessly, or without due consideration and that the denial resulted in prejudice amounting to a denial of justice.

While constitutionally guaranteed, the right to counsel of one's choosing is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Bullock*, 353 Ark. 577, 111 S.W.3d 380; *Simpson v. State*, 2015 Ark. App. 103, 455 S.W.3d 856. Once competent counsel is obtained, any request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *King v. State*, 2019 Ark. App. 531, 589 S.W.3d 420. The right to counsel may not be manipulated or subverted to obstruct the orderly procedures of the court or to interfere with the fair, efficient, and effective administration of justice, particularly when a change of choice is made on the eve of trial primarily for the purpose of delay and without making any effort to obtain substitute counsel. *Arroyo, supra.* A court is not required to allow a change in attorneys shortly before a trial date simply because there are differences or disagreements between attorney and client. *Simpson, supra.* In each situation the court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis. *King, supra.* Factors to be considered by the circuit court include whether there was adequate opportunity for the defendant to employ counsel; whether other continuances have been requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving rise to the request for a continuance; whether the reason for the

discharge of existing counsel was solely for the purpose of obtaining a continuance; and whether the request was consistent with the fair, efficient and effective administration of justice. *Id.* None of these factors are a prerequisite to the granting of a continuance, but these and other factors are the legitimate subject of the court's attention when a continuance is requested. *Arroyo, supra.*

Appellant compares the facts of his case to those in *Arroyo, supra*. However, *Arroyo* is distinguishable. In *Arroyo*, the appellant sought a continuance to substitute counsel the day before his jury trial. The circuit court declined to hear from substitute counsel about why a continuance was necessary and failed to conduct any inquiry into appellant's request. The supreme court reversed and remanded, holding that "[a]ppellant's motion for continuance to substitute new counsel was wrongly denied because the circuit court failed to consider [a]ppellant's interests when deciding the motion." *Arroyo*, 2013 Ark. 244, at 8, 428 S.W.3d at 470. The *Arroyo* court explained that there was no evidence in the record that the circuit court balanced appellant's right to choice of counsel against the needs of fairness and the demands of its calendar; there was no evidence that appellant made the request primarily for the purpose of delay; the circuit court made no attempt to determine why appellant requested the change or whether appellant had acted diligently in seeking the change; nor had the circuit court considered any of the other relevant factors. That is not the case here.

Instead, the circuit court specifically considered the factors enumerated in *Arroyo* and found that the motion was filed for the purpose of delay or to interfere with the fair, efficient, and effective administration of justice; all witnesses were present for trial; appellant had

13

waited until the eve of trial to retain new counsel despite the fact that he had previously been out of custody during the pendency of the case; and a jury panel had already been called. Moreover, the circuit court noted that appellant's case had been unresolved for eight months and that Mr. Mazzanti, who was present, stated that he was prepared for trial. Because the circuit court clearly articulated the factors it considered in denying appellant's request for a continuance, we cannot say that the circuit court abused its discretion in denying appellant's motion for a continuance. Accordingly, we affirm.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*The Law Offices of J. Paul Coleman*, by: *J. Paul Coleman*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.